376 So.2d 607 (1979)
John G. MANALE
v.
DEPARTMENT OF POLICE.
No. 10351.
Court of Appeal of Louisiana, Fourth Circuit.
October 10, 1979.
R. Glenn Cater, New Orleans, for appellee.
Michael A. Starks, Deputy City Atty., New Orleans, for appellant.
Before SAMUEL, GULOTTA and GARRISON, JJ.
GULOTTA, Judge.
The New Orleans Police Department appeals from a majority decision of the Civil Service Commission of the City of New *608 Orleans[1] reinstating a discharged police officer. The Commission concluded that the city had not "met its burden of proof regarding intimidation and lying during an investigation." The Commission further stated:
"Basically, Appellant is accused of insubordination, intimidation of a superior and lying during an investigation. On November 18, 1977 Sergeant Orticke issued Appellant a Unit Level reprimand for excessive time in handling a complaint. The following day when assigned to various calls Appellant requested specific instructions from Sergeant Orticke concerning the amount of time he should spend on that type of call. Sergeant Orticke felt that Appellant was being sarcastic and ordered him to the station. During the course of the discussion between Appellant and Sergeant Orticke, Appellant allegedly became loud and boisterous and told the Sergeant he had a "little black book" in which he was keeping a record of the misconduct of the ranking officers at the Fifth District. Since it was Appellant's word against that of Sergeant Orticke both men were given polygraph examinations. According to Sergeant Williams, the examiner, the results showed that Sergeant Orticke was truthful and Officer Manale was untruthful with respect to the question of a "little black book." The City's case was based primarily on the polygraph test. Without the polygraph, it is simply Appellant's word against that of Sergeant Orticke."
Relying on the authority of State v. Corbin, 285 So.2d 234 (La.1973) the Commission found the polygraph test inadmissible and concluded that the City's case had to stand or fall without the results of the tests.
It is the City's contention that the Commission erred in failing to consider the results of the polygraph examinations. The City further contends that even though the polygraph tests were not admitted, the City carried its burden of proof in its presentation of other evidence including the prior unsatisfactory record of the discharged police officer. We do not agree.
We cannot say the Commission erred in its refusal to consider the polygraph tests. In a recent decision the Louisiana Supreme Court in State v. Catanese, 368 So.2d 975 (La.1979) held that the results of polygraph examinations were inadmissible in a trial to determine the guilt or innocence of an accused. The Court went on to say, however, that these tests might be used in post-trial proceedings if conducted under "optimal conditions." The majority opinion further stated that although polygraph tests have become more reliable the admissibility of the test results was "within judicial discretion and subject to guidelines. . ."
Based on the evidence in the instant case with respect to the manner in which the polygraph tests were conducted, we cannot say that guidelines were used to insure the reliability, objectivity or integrity of the results. Although the person conducting the tests stated that he had been certified by the American Polygraph Association and had conducted more than 800 examinations prior to the ones he performed in the instant case, we find no evidence to indicate that any specific guidelines were used to insure the tests were conducted under "optimal conditions." As a matter of fact, the police officer who conducted the examination was a member of the New Orleans Police Department at the time the tests were taken and the many examinations conducted by him had been performed in his capacity as a police officer.
We cannot say, therefore, that the Commission abused its discretion in rejecting as evidence the results of the polygraph examination.
We also reject the City's argument that even without the polygraph results they had met the burden of proof required to warrant Manale's discharge for misconduct. In connection with the November 18th and 19th, 1977 incidents there exists a *609 direct conflict as to whether or not Manale's language and actions constituted sufficient insubordination to place him in violation of the department's regulations. Sergeant Orticke's testimony that Manale had been sarcastic and threatening on November 19th was contradicted by Manale's version of the incident. There were no other witnesses to the incidents who could shed light on the veracity of either party's version of the confrontation. Under the circumstances, we cannot say the Commission's evaluation of the evidence was incorrect.
Evidence of Manale's prior departmental problems was presented at the hearing, as well as evidence of his receipt of a law enforcement award from the United States Secret Service and a departmental commendation. Although this evidence may be of some corroborative value, we do not find it relevant in the ultimate determination of whether or not Manale was innocent or guilty of the alleged misconduct on November 18th and 19th, 1977.
Having so concluded, we affirm the decision of the City Civil Service Commission.
AFFIRMED.
NOTES
[1] Two commissioners of the five man commission dissented.