SEXTON, Judge,
dissenting.
I respectfully dissent.
The trial court found that plaintiff, Associates, was a holder in due course of the promissory note, which was secured by the chattel mortgage, and that plaintiff’s status therefore “cut off” the defense of improper use of executory process. It is of course true that a holder in due course may cut off a maker’s substantive defenses to the payment of a note. See LSA — R.S. 10:3-305. However, the idea that a plaintiff seeking to enjoin the use of executory process by a holder in due course may not “go behind” the face of the instrument in an effort to prove that the instrument was not in fact sufficiently executed for use in an executo-ry process proceeding is in error.
The insufficiency of executory process evidence is not a substantive defense. It is instead a procedural bar which disqualifies the holder in due course from utilizing a certain summary procedure which the law makes available only in certain, limited circumstances. The evidence requirement is not a substantive defense in the strictest sense, but is instead a procedural prerequisite to a specific form of summary proceedings. Thus, where the insufficiency of the evidence is successfully urged, it does not defeat a substantive cause of action; it merely mandates the inapplicability of a specific procedural mode which is only available to creditors who have strictly complied with the law. The notion that the legal prerequisites to the use of executory process are not substantive defenses is manifest from the fact that where executory process is unavailable to a creditor, he may enforce his mortgage by ordinary proceedings. Thus, these legal requisites do not operate to defeat the enforcement of a given obligation, but merely govern the availability of a particular procedural means of enforcing such an obligation. See American B. & T. Co. in Monroe v. Carson Homes, Inc., 316 So.2d 732 (La.1975).
Furthermore, parole evidence has consistently been held admissible for the purpose of establishing that an instrument was not properly executed for the purpose of enjoining executory process. Carson Homes, supra. See also Ford Motor Credit Company v. Williams, 225 So.2d 717 (La.App. 1st Cir.1969), where, though not a specific issue, executory process by a holder in due course was enjoined as a result of parole evidence that the documents were statutorily insufficient to support executory process.
I am not certain that Associates Discount Corporation v. Bankston, 246 So.2d 335 (La.App. 1st Cir.1971), writ refused, noted by the majority, is pertinent. As a suit for a deficiency judgment, it is a subsequent attack on the authenticity of the evidence submitted for executory process. If it does in fact hold that a holder in due course seeking executory process may not suffer an attack on the authenticity of the evidence then I believe it is in error.
As a result of its holding that Associates status as a holder in due course “cut off” *1313 defenses, the trial court did not consider whether the mortgage at issue was properly executed. The trial testimony of the parties was in direct conflict on the issue. However, the plaintiffs-in-rule apparently passed a polygraph test which indicated that they were telling the truth when they stated that the witness, Mr. Towers, was not present when they signed the mortgage. This polygraph evidence found its way into the record only as a proffer.
Of course, the party attacking an execu-tory process on the basis of the insufficiency of the evidence has the burden of proof. Considering that the testimony concerning the execution of the mortgage is in direct conflict, it seems clear that the question of the admissibility of the polygraph evidence assumes major importance. Whether polygraph evidence is admissible in a civil case appears to be res nova, although recent jurisprudence seems to strongly imply that it should be considered.
In State v. Catanese, 368 So.2d 975 (La.1979), the leading polygraph case in our jurisprudence, our Supreme Court was unwilling to allow the use of polygraph evidence in the trial itself of a criminal cause even before a judge alone. It appears that the rationale for exclusion of the evidence in those circumstances was a fear that a mantle of invincibility or conclusiveness would be assigned to the polygraph evidence, and that it therefore would not be judged critically. Furthermore, concern over licensing and regulation of potential polygraph witnesses, as well as a lack of judicial experience with this type evidence in the state, were strong bases for the exclusion.
However, in spite of concluding that the evidence was inadmissible in a criminal trial itself, the court stated:
“[T]he reasons for our decision do not prevent its introduction in post trial proceedings, within judicial discretion and subject to guidelines such as those laid down by the trial judge in the instant case. Because the defendant’s guilt or innocence is not at issue in such proceedings, there is less demand for the rigorous guarantees of accuracy which typify the rules governing introduction of evidence at trial. Consequently, the reasons for excluding polygraph evidence in criminal trials are not necessarily compelling in post trial proceedings. This avenue of admissibility, therefore, should be open, within the discretion of the trial judge, whenever the evidence is reliable and will aid in a decision.” Catanese, supra, at pp. 982-988. [Emphasis ours]
It should be noted that then Chief Justice Summers and Justice Marcus did not agree with the dicta which encouraged the use of such evidence in post-trial proceedings. However, then Justice Tate was willing to go further than the majority. In his partial concurrence and partial dissent, he stated:
“Furthermore, once we lay aside the unreliability rationale, there seems to be absolutely no sensible reason to exclude the results of polygraph tests conducted under reliable circumstances, with the stipulation of both the state and the defendant that the results of the test can be admitted in evidence on the trial on the merits.” Catanese, supra, Tate, J., dissenting at p. 984. [Emphasis ours]
Also of interest is the Fourth Circuit’s opinion in Manale v. Department of Police, 376 So.2d 607 (La.App. 4th Cir.1979). In Manale, the City of New Orleans was appealing a civil service commission ruling reinstating a discharged police officer and urging the admissibility of a polygraph examination adverse to the officer. The Court upheld the civil service commission’s failure to consider the polygraph examination based on the court’s determination that the strict guidelines of Catanese had not been shown to have been followed in the administration of a polygraph test at issue. The implication of the opinion, then, is that had the guidelines been followed, the court might well have considered the evidence at issue, seemingly being influenced, as I, by the strong dicta of Catanese urging consideration of polygraph evidence at least in criminal post-conviction matters.
I am therefore unable to theoretically distinguish between the use of a proper polygraph examination to support a wit *1314 ness’ testimony in a proceeding such as here presented and its use for the same purpose in post-conviction proceedings. I believe that, at least under these limited circumstances, the results of a competent polygraph examination conducted in accordance with the standards of Catanese should be received in evidence.
I would remand the cause to the trial court for its resolution of the factual issue of whether the mortgage in question was sufficiently executed so as to support exec-utory process. In so doing, I would ask the trial court to thus determine the credibility of the witnesses here for each side, taking the polygraph evidence into consideration. In so remanding, I would remind the trial court to recall the admonition of Catanese that trial courts are to be as critical of polygraph evidence as any other evidence. It should not necessarily be accepted as conclusive on its face and should be compared with all of the evidence in a case.
Considering the freshness of this issue and the likelihood that all parties assumed the polygraph evidence would not be admissible on the trial of the cause, I would be reluctant to charge appellants with the failure to provide appellee with a copy of the test administered to their witnesses prior to the trial. Likewise, I would be unwilling to charge appellee with the failure to determine the existence of appellants’ polygraph evidence by pre-trial discovery and to obtain independent examination of the test at issue, or to obtain polygraph examinations of their own witnesses, if they wished to do so.
In remanding for an evaluation of the factual issue of the sufficiency of the mortgage at issue in light of the polygraph evidence, I would instruct the trial court that this evaluation should contain a reasonable opportunity for appellee to have a competent polygraph expert examine the tests and testify on the issue. Moreover, appellee should be given an opportunity to present any polygraph examinations administered on the issue to its own witnesses who have testified previously, if the examinations qualify under the standards of Cat-anese. If appellee elects to produce such evidence, then appellants should be given an opportunity to have their experts examine the tests given those witnesses and to testify on that issue.
In taking this position I am mindful of the freshness of the issue and the potential which such a decision has for the expansion of civil trials. However, as the trial judge in Catanese, I became convinced that when the standards of Catanese are followed, that the polygraph is accurate at least 85% to 90% of the time, with the accuracy increasing depending on the skill of the operator. That level of accuracy is substantially greater than many of the medical tests which we currently routinely receive in evidence.
Therefore, while the trials which did occur might in some cases be turned into a battle of polygraph experts, I likewise believe that we would have an enormous reduction in factual disputes.
Succinctly stated truth is our work and I believe it would be best served by the acceptance in evidence of competent polygraph examinations.
Before PRICE, HALL, MARVIN, FRED W. JONES, Jr., and SEXTON, JJ.