DOWNING, J.
|?This matter arises from a lawsuit against a Louisiana State Police trooper for allegedly using excessive force when arresting a driver suspected of driving while intoxicated. The Louisiana State Police, the trooper’s employer, was also sued. For the following reasons we affirm the judgment rendered in accordance with the jury verdict that dismissed plaintiffs action.
FACTS AND PROCEDURAL HISTORY
Plaintiff-appellant, Ernest L. Cook, was stopped[1] for suspicion of driving while intoxicated as he and his wife were returning from the Shrimp and Petroleum Festival in Morgan City. Louisiana State Trooper Michael Arton conducted the stop. After Cook failed a field sobriety test, Arton arrested him. Cook was handcuffed behind his back and transported to the Ber-wick Police Station. After parking at the station, but before going inside the building, an altercation arose. Arton subdued Cook with a technique known as an “arm bar takedown.” Cook was injured in the process. He was taken by ambulance to a Morgan City hospital where he was treated and kept overnight.
Cook made a formal complaint to the Louisiana State Police about Arton’s conduct. The Internal Affairs section investigated the complaint but concluded there was insufficient evidence to substantiate the accusations.
Subsequently, Arton was arrested for criminal misconduct, unrelated to Cook’s incident. Arton later pleaded guilty to two felony charges. His employment with the state police was terminated.[2]
Cook filed suit for damages against Ar-ton and the Louisiana Department of Public Safety and Corrections, Office of State Police laCcollectively, Arton) asserting that excessive force was used in his arrest and detention in violation of his civil rights and rights to due process.
*591 A jury trial ensued from April 5 — April 9, 2004. The jury found that Arton did not intentionally or recklessly use excessive force against Cook. Judgment was signed April 19, 2004. From that judgment Cook appealed alleging the following assignments of error:
1. The trial court erred in not allowing plaintiff, to introduce evidence that Michael Arton was not credible; specifically, that Arton failed a polygraph test administered to him as part of an investigation into the theft of Governor Mike Foster’s fishing rods, and then lied in his deposition denying he ever failed a polygraph test.
2. The trial court erred in not allowing plaintiff to question defendant’s expert, Sergeant Charles Dupuy, with regard to Arton’s character for truthfulness when Sgt. Dupuy admitted he considered the credibility of both Arton and Cook when giving his opinions at the trial.
3. The jury erred in finding that plaintiff did not prove his case in proving that Arton used excessive force in arresting/detaining Cook.
DISCUSSION

Admissibility of Evidence Regarding Polygraph Results

Arton was terminated from his employment with the State Police. During discovery, Cook learned that several months before his DWI arrest, Arton was reprimanded regarding some missing fishing tackle belonging to Governor Murphy “Mike” Foster to whom he was assigned at the time. Further inquiries into the personnel records disclosed that Arton failed a polygraph, tested positive for marijuana, and had been convicted on two felony counts. Cook also discovered that Arton denied in deposition that he failed the polygraph.
During a motion in limine hearing, the trial court ruled that Arton’s convictions would be admissible but the results of the polygraph test and testimony concerning the criminal incidents were inadmissible. The trial |4court reasoned that evidence concerning the thefts was inadmissible because the thefts were unrelated to Cook’s lawsuit. The court also stated that the drug test results would not be admitted unless there was some evidence that Arton smoked marijuana immediately prior to Cook’s arrest.
Cook contends that the trial court erred in not allowing this evidence to be presented to the jury. Specifically, Cook wanted the trial court to admit evidence that Ar-ton failed the polygraph test and later lied under oath by claiming to have passed it. Cook first argues that LSA-C.E. art. 618 authorizes the admissibility of extrinsic evidence of prior inconsistent statements after the witness has been given the opportunity to admit the fact and has failed to do so. Cook next argues that LSA-C.E. art. 607(C) authorizes impeachment by questioning a witness concerning the prior inconsistent statements, in this case, saying that he passed the polygraph.
Polygraph evidence is not admissible in civil trials.[3] It is well settled that the results of polygraph examinations are *592 inadmissible in criminal trials. Hines v. Arkansas Louisiana Gas Company, 613 So.2d 646 (La.App. 2 Cir.1993). The exclusion of polygraph evidence in civil trials has consistently been upheld in both state and federal jurisdictions, and we find no authority to allow this evidence to be admitted. See Rebouche v. Anderson, 505 So.2d 808 (La.2 Cir.1987); Manale v. Department of Police, 376 So.2d 607 (La.App. 4 Cir.1979); Barrel of Fun, Inc. v. State Farm Fire & Casualty, 739 F.2d 1028, 1031 (5th Cir.1984).
State v. Catanese, 368 So.2d 975 (La. 1979), is a landmark decision regarding the introduction of polygraph evidence. The Catanese court’s fundamental concern was that the trier of fact is apt to give almost Inconclusive weight to the polygraph expert’s opinion. Id. at 981. The court warned that the use of polygraph evidence is generally outweighed heavily by its accompanying dangers, such as possible prejudice. Id. at 983. Because of the potentially decisive character of polygraph evidence, the court set forth a number of factors that must first be met before it will consider whether the results may be admitted. The court did not specifically rule on the admission of polygraph evidence in civil cases because that issue was not before them.
Here, we are directly confronted with the admissibility of polygraph evidence in this civil litigation, although in an indirect context. And for the same reasons that the Catanese court excluded polygraph results in criminal trials, we rule that they are also inadmissible civil trials. Therefore, the trial court did not err in excluding all evidence regarding Arton’s polygraph results, including whether he took the test and whether he passed or failed it.
We recognize that Cook is not requesting that Arton’s polygraph test results be admitted as evidence. Rather, under the guise of a prior inconsistent statement, Cook seeks to introduce evidence that Ar-ton took the test, did not pass it, and then said that he did. Cook cannot get through the back door what he cannot properly get through the front door. ' However, as stated above the evidence is inadmissible and the trial court did not err in excluding it.
Further, Cook apparently believes that Arton’s disciplinary record will show Ar-ton’s propensity for untruthfulness and general lack of character. However, pursuant to LSA-C.E. article 404(B), evidence of other crimes or misconduct is inadmissible to prove the character of a person in order to show that he acted in conformity therewith.
| fiHere, the trial court did not err in concluding that Arton’s polygraph test results were inadmissible because they are inadmissible in civil trials. Further, the trial court did not err in concluding that the evidence of his other criminal behavior was inadmissible as the acts were irrelevant to Cook’s case. Thus, the trial court did not abuse its discretion in declining to admit this evidence.
This assignment of error is without merit.

Attacking Defendant’s Truthfulness, Character, and Credibility Through The Expert

Cook alleges in his second assignment of error that the court erred in not allowing Sergeant Charles Dupuy, defendant’s expert witness in the field police defensive tactics, to answer questions about Arton’s character. Specifically, Cook alleges that it was legal error for the trial court to exclude his questions regarding Arton’s polygraph results and whether the expert was aware of'Arton’s prior criminal activities.
Cook maintains that these questions should have been allowed because Sgt. Du- *593 puy admittedly based his expert opinion upon both Cook’s and Arton’s credibility. Cook, citing State v. Berry, 94-249 (La. App. 5 Cir. 10/25/94), 645 So.2d 757, argues that LSA-C.E. art. 607 authorizes a party to examine the witness concerning any matter having a reasonable tendency to disprove the truthfulness of his testimony.
However, as discussed above, polygraph evidence, including the result, is inadmissible. We therefore conclude that the trial court did not err in not disallowing this line of questioning. Accordingly, this assignment of error is without merit.

17Manifest Error

Cook alleges in the final assignment of error that the jury erred by concluding he did not prove that the officer used excessive force when making the arrest. Cook contends that being slammed to the pavement and then kicked and jerked up by the handcuffs was unnecessary and excessive force by any standard. He argues that this is especially true when he is a 62-year-old man weighing 145 pounds and Arton is a 5'10" 31-year old weighing 190 pounds. Cook maintains that this was especially unnecessary treatment when he was already handcuffed and only trying to reach a small pocketknife in his front pocket to turn over to the police.
Contradictory evidence was introduced at trial regarding Cook’s arrest and altercation with Arton. Arton testified that Cook said that he had a knife in his front pocket but refused to allow Arton to remove it. He further testified that when he tried to reach the knife, Cook spun around so Arton was forced to use some pressure to maintain control. Arton testified that when he attempted to slowly lower Cook to the ground, Cook continued to struggle and the side of Cook’s face struck the pavement. Cook began to bleed heavily. Arton testified that Cook’s wife walked up about that time and commented that the excessive bleeding was probably due to the blood-thinning medication he had been taking.
Evidence was also presented that Cook’s blood alcohol concentration was more than twice the legal limit for driving but he continued to maintain that he only had “a couple” of beers. The ambulance technician also testified that Cook appeared drunk and was uncooperative while being transported to the hospital in Morgan City.
It is well settled that the factfinder’s reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon | ^review where conflict exists in the testimony. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). While an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder’s, the issue to be resolved by a reviewing court is not whether the factfin-der was right or wrong, but whether the factfinder’s conclusion was a reasonable one and supported by the evidence. Stobart v. State, Through Dep’t of Transp. and Dev., 617 So.2d 880, 882 (La.1993). After a careful review of the record, we conclude that the jury did not err in finding in favor of the defendants. Accordingly, the third assignment of error is without merit.
DECREE
For reasons hereinabove set forth, the judgment of the trial court is affirmed and the costs of this appeal are assessed against the plaintiff-appellant, Ernest L. Cook.
AFFIRMED.
GAIDRY, J., concurs with reasons.
CARTER, C.J., concurs for reasons assigned by GAIDRY, J.

. Cook's arrest took place Saturday, September 2, 2000 at 11:16 p.m.

. Arton's arrest took place September 15, 2000; on December 13, 2000 he pled guilty.

. In administrative hearings the rules of evidence are more relaxed and hearing officers have been given the discretion to admit evidence that would otherwise be inadmissible. Evans v. DeRidder Mun. Fire, 01-2466, p. 5 (La.4/3/02) 815 So.2d 61, 66. The Evans court decision specifically stated that they made no ruling on whether a polygraph was admissible in a civil trial outside of the context of a Civil Service Board hearing. Id. at fn. 3. -