347 So.2d 1255 (1977)
Joel I. FORREST, Plaintiff-Appellee,
v.
Bill LYNCH and Times-Picayune Publishing Company, Defendants-Appellants.
No. 11361.
Court of Appeal of Louisiana, First Circuit.
June 13, 1977.
Rehearing Denied July 11, 1977.
*1256 Robert Kleinpeter, Baton Rouge, of counsel for plaintiff-appellee Joel I. Forrest.
Frank W. Middleton, Jr., Baton Rouge, of counsel for defendant-appellant Bill Lynch and Times Picayune Pub. Corp.
Before SARTAIN, COVINGTON and LOTTINGER, JJ.
SARTAIN, Judge.
This is a defamation suit arising out of an article that appeared on January 26, 1973 in the States Item, a newspaper of general circulation in the New Orleans area.
Plaintiff, Joel I. Forrest (appellee) is a consulting electrical engineer. He was engaged by the architect to prepare plans and specifications, including bid specifications, for the television-sound system for the Louisiana State School for the Deaf, Baton Rouge, Louisiana.
The article itself was written by Bill Lynch. The headline attending the article was prepared by an unidentified staff member of the owner-publisher, Times Picayune Publishing Company (appellant).
Appellee named as defendants the author, Lynch, and the appellant publisher. The trial judge rendered judgment in favor of appellee and against the publisher only, absolving the author of any liability. We affirm.
The facts are not in dispute. The taking of bids and related matters are under the supervision of the State Bond and Building Commission, Bob Baskin, Director. However, the law requires the prior approval of the Louisiana Educational Television Authority (LETA) on that portion of the project relating to the communication system. Robert D. Blazier and Max Fetty are the Educational Television Engineer and Executive Director, respectively, of LETA.
On the Tuesday preceding the Monday on which the bids were to be taken, the plans and specifications pertaining to the communication system were submitted to Blazier and Fetty. On the intervening Thursday, January 25, 1973, Blazier and Fetty addressed a letter to Baskin, which in pertinent part stated:
"After reviewing the specifications for the communication system for the Louisiana State School for the Deaf in Baton Rouge, I must commend the writer for the use of very innovative television technology. The functions described in these specifications require sophisticated interconnection and planning.
"In order to properly evaluate the true quality of these specifications, it will be necessary that one-line functional drawings *1257 be provided. It is incumbent upon us to determine that the system as specified will function in accordance with the desires of the School for the Deaf. The nature of these specifications seem somewhat proprietory (sic) to certain manufacturers. Nonetheless, it is our desire to have specifications that all responsible bidders can bid with impunity. In evaluating these specifications, it would assist us greatly to have manufacturers specifications sheets for each of the major electronic devices. * * *" (Emphasis ours)
Bill Lynch, capital correspondent for appellant, was given a copy of the letter. The subject article was then written and transmitted to appellant for publication. It appeared in appellant's paper on the following day, Friday, January 26, 1973.
The lead paragraph set the general tenor of the article:
"BATON ROUGESpecifications for an expensive television-sound system for the new school for the deaf scheduled for bidding Monday appear to be proprietary, officials of the Louisiana Educational Television Authority today advised the State Bond Commission. * * *"
The above portions of the letter of January 26, 1973, are also quoted in their entirety. With respect to appellee the article stated:
"* * * The school is being designed by the architectural firm of August Perez and Associates of New Orleans and the electrical engineering is by Joel Forrest of Baton Rouge. * * *"
However, the headline of the article stated:
"BID SPECS REPORTED `RIGGED'"
The article was placed on page one of the paper and was continued to page six. The headline for the continued portion of the article read:
"Bid Specs Questioned"
The record reflects that on the evening of January 25, 1975, Forrest met with Blazier and it was determined that the bid specifications were in order and were therefore approved by LETA as prepared. However, Lynch was not informed of the approval or of the letter of January 26, 1973 confirming such approval.
Appellee originally objected to and claimed to be defamed by both the article itself and the headline. However, his emphasis on appeal, in brief and oral argument, is really directed to the headline and the use of the word "rigged". The trial judge, and we agree, found nothing objectionable about the article itself. The author, Lynch, reported no more than the legitimate concern of LETA and the possibility of preferential treatment given the certain manufacturers, i.e., proprietary. There has been no appeal from that portion of the judgment dismissing appellee's suit against Lynch. Accordingly, the dispute now centers around the article and the headline and appellee's claims against and the defenses raised by appellant.
Appellant argues that the trial judge erred (1) in holding that in the context of the news article the use of the word "`rigged'" in the headline gave rise to an action in defamation; (2) in refusing to hold that appellee was a "public official" or "public figure", thereby requiring proof by clear and convincing evidence that the publication was made with knowledge of its falsity or a high degree of awareness of its probable falsity; (3) in holding that the use of the word "`rigged'" constituted fault under C.C. Art. 2315, and (4) in assessing excessive damages.
Appellant's first assignment of error is based on the well established rule that truth or substantial truth is a defense to an action in defamation. Rosen v. Capital City Press, 314 So.2d 511 (La.App.1st Cir. 1975). Further, that R.S. 38:2290-2296 prohibits closed specifications in public bidding. In this connection, appellant argues that the entire article, including the headline, must be viewed as a whole in determining whether any libel has been committed, Mulina v. Item Co., Inc., 217 La. 842, 47 So.2d 560 (1950); that the article is based on the letter (January 25, 1973) which raised the question of improper, perhaps illegal, conduct; and, in this context, that the headline *1258 connotes no more or less than that which is actually stated in the letter and would certainly be so understood by the everyday reader. Thus, appellant claims that an examination of the entire story, including the headline, clearly shows that the word "rigged" was used as a synonym of or paraphrase for "proprietary" or "closed" specifications, and that the headline was true or at the least, substantially true. This argument must be rejected.
We do not construe the word "rigged"[1] as being synonymous with the word "proprietary",[2] particularly when it is used in the sense that illegality is inferred. The proprietary interest called to attention in the article may or may not be illegal, improper or otherwise questionable. However, the use of the word "rigged" leaves little doubt as to its import and brands the activity of appellee as fraudulent, illegal and improper. Whereas one not particularly versed in or blessed with a superior knowledge of word meanings might attach some improper motive to the proprietary inquiry contained in the letter, the word "rigged" dispels any doubt. The average, everyday individual does his talking, listening, reading and writing without constant reference to an unabridged dictionary.
Appellant's second assignment of error pertains to the failure of the trial judge to hold that appellee is a public official or public figure so as to require a finding of malice on the part of the author or the publisher. The appellee is neither a public official nor a public figure under the holdings in New York Times Company v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) or Gertz v. Welch, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974).
The designation of "public official" applies, at a minimum, to those persons employed by a public or governmental body who have, or appear to have, substantial responsibility for or control over the conduct of governmental affairs. Rosenblatt v. Baer, 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966). Appellee does not fall within the above category. He is a private consulting engineer who was hired by the architect. While he was responsible for the plans and specifications of the subject communications system, he was nonetheless totally accountable only to the architect. The eventual expenditure of public funds on the proposed building does not in itself make appellee a public official.
A person not a public official, who voluntarily injects himself or who is drawn into a particular public controversy becomes a public figure as regards that controversy and assumes a special prominence in the resolution of the controversy. In such a case the same rules apply to a public figure as apply to a public official. Gertz v. Welch, above. In such cases, malice or a total disregard as to the probable falsity of the objectionable material is required. Again, appellee does not fall within that class of persons deemed to be a public figure.
Appellant's third contention is that the trial judge erred in holding that the use of the word "rigged" constituted fault under the law of Louisiana so as to impose liability. We find the case of Wilson v. Capital City Press, 315 So.2d 393 (La.App.3rd Cir. 1975), writ denied 320 So.2d 203 (La.1975), to be in point. There (315 So.2d 393, 397) the court stated:
"Under the mandate of Gertz v. Robert Welch, Inc., supra, a publisher may be held liable for defamatory falsehood only if there is some fault on his part. The Supreme Court did not hold that the printing of an untruth would itself constitute fault. There must be some culpability on the part of the publisher." (Emphasis ours)
The same rationale was followed in LeBoeuf v. Times Picayune Publishing Corporation, 327 So.2d 430 (La.App.4th Cir. 1976).
*1259 In each of these cases an error in identification was made by a law enforcement agency. There were no independent acts of culpability on the part of the defendants. In essence, the courts held that the reporters there concerned were not at fault when they failed to seek additional verification before publishing the names of persons given to them as having been arrested. In the case at bar, the facts are quite dissimilar. Here the use of the libelous term "rigged" was solely the act of an unidentified copy editor of the appellant-publisher. It was a poor and erroneous choice of words and, in our opinion, constitutes fault. C.C. Art. 2315.
Lastly, appellant argues that the award of $10,000.00 is grossly excessive " . . . in the absence of any evidence of more than temporary irritation and slight embarrassment". Appellee, while admitting that the article caused him some aggravation, testified that he had never been involved in any type of controversy, had always endeavored to practice his profession in keeping with proper ethics, and had always sought to abide by the law. Additionally, appellee claimed that he had received no state-associated work between the date of the article and the trial of this cause, a period in excess of three years. Under these circumstances, we are not disposed to hold that the trial judge abused the great discretion accorded him in such matters. C.C. Art. 1934(3).
Accordingly, for the above reasons, the judgment of the district court is affirmed at appellant's costs.
AFFIRMED.
NOTES
[1] Webster's Third New International Dictionary defines "rigged" as "a fraudulent or a cheating trick."
[2] Ibid., defines "proprietary" as "made and marketed by person or persons having the exclusive right to manufacture and sell."