bGAIDRY, J.
In this suit for damages arising from an alleged conspiracy and defamation, the trial court granted summary judgment in favor of defendants, and plaintiff appealed. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
In 1991, Health Associates and Blue Cross/Blue Shield entered into a contractual agreement whereby Health Associates agreed to provide services to Blue Cross/ Blue Shield, including the performance of utilization review and pre-certification of patients who sought to obtain mental health benefits from Blue Cross/Blue Shield. Health Associates reviewed the files of all patients who sought benefits from Blue Cross/Blue Shield due to mental/psychiatric problems and provided a recommendation as to whether the claim for benefits should be approved or disapproved by Blue Cross/Blue Shield.
In 1999, Health Associates entered into separate consulting agreements with Drs. Charles Chester and Henry Olivier, wherein the doctors agreed to provide psychiatric consultation services for Health Associates. Specifically, Drs. Chester and Olivier were to review patients’ need for psychiatric services and make recommendations regarding same.
Plaintiff, Dr. James Blackburn, was a psychiatrist and medical director at Charter Cypress Hospital in Lafayette, Louisiana. Blue Cross/Blue Shield and Charter had a contract wherein Charter Cypress would provide services to patients insured by Blue Cross/Blue Shield, to be paid for by Blue Cross/Blue Shield at agreed-upon rates. C.L. was a patient at Charter Cypress from September 18, 1999 to October 1, 1999 and from October 7, 1999 to October 10, 1999 under the care of Dr. Blackburn. Dr. Blackburn | ^concluded that inpatient services were necessary for treatment of C.L.’s depression and suicidal thoughts.
Drs. Chester and Olivier received C.L.’s medical records pursuant to their contracts with Health Associates for the purpose of reviewing them and determining *715 whether C.L. was entitled to Blue Cross/ Blue Shield benefits for inpatient care as recommended by Dr. Blackburn. They concluded that C.L.’s primary problem was substance abuse/dependency and not depression, and thus recommended that she be denied benefits for inpatient psychiatric care.
These recommendations were forwarded to Blue Cross/Blue Shield, and Blue Cross/ Blue Shield subsequently denied C.L.’s benefits. Dr. Blackburn made a first request for an appeal to Health Associates and then made a second request for an appeal to Blue Cross/Blue Shield. Blue Cross/Blue Shield’s appeals committee ultimately approved the benefits, because although they agreed with Health Associates’ recommendation that benefits should be denied because C.L.’s primary problem was one of substance abuse rather than depression, they felt that C.L. did appear to need inpatient care.
In December 1999, Dr. James Gengel-bach, the Medical Director of Blue Cross/ Blue Shield, sent a letter to Lisa Whaley, Regional Managed Care Director of Charter Cypress Hospital, addressing concerns with Dr. Blackburn’s treatment of C.L. Lisa Whaley forwarded this letter to several people at Charter in an attempt to resolve the situation.
Dr. Blackburn filed suit against Dr. Gengelbach and Louisiana Health Service and Indemnity Company, d/b/a Blue Cross/Blue Shield of Louisiana, alleging conspiracy and defamation in connection with Dr. Gengelbach’s letter. Specifically, Dr. Blackburn alleges that Dr. Gengel-bach, while in the 14course and scope of his employment with Blue Cross/Blue Shield, issued a defamatory letter to Lisa Whaley, wherein he stated that Dr. Blackburn had rendered inappropriate medical treatment to C.L. and that Dr. Blackburn had not adequately ascertained the significance of C.L.’s medical history. Dr. Blackburn’s conspiracy claim arises from an assertion that Health Associates and Drs. Chester and Olivier conspired to fabricate the information relayed to Dr. Gengelbach and contained in the letter to Lisa Whaley as part of a scheme to force Dr. Blackburn to change his behavior and to save Blue Cross/Blue Shield money.
A motion for summary judgment was filed by the defendants, and the trial court granted the summary judgment on grounds that Dr. Blackburn failed to meet his burden of proof on the defamation and conspiracy claims. This appeal followed, in which Dr. Blackburn asserted the following assignments of error:
1. The trial court erred, as a matter of law, in finding that the statements were not defamatory as a matter of law.
2. The trial court erred when it implicitly found the defendants met their burden of proof and established the absence of any genuine issue of material facts.
3. The trial court erred when it found that the plaintiff did not meet his burden of proof to. establish the elements necessary to maintain a cause of action in defamation beyond- summary judgment.
4. The trial court erred in its application of existing law for defenses to the claim of defamation rather than applying existing law to determine if the elements of the tort of [fidefamation had been established, thereby imposing upon the plaintiff an erroneous burden of proof.
5. After having ruled that the plaintiff failed to establish the elements necessary to maintain a claim in defamation, the trial court erred in finding that there was no conspiracy, as *716 a matter of law, among the defendants.
DISCUSSION
An appellate court’s review of a summary judgment is a de novo review based upon the evidence presented at the trial court level and using the same criteria used by the trial court in determining whether a similar judgment should be granted. J. Ray McDermott, Inc. v. Morrison, 96-2337 p. 9 (La.App. 1 Cir. 11/7/97), 705 So.2d 195, 202, writs denied, 97-3055, 97-3062 (La.2/13/98), 709 So.2d 753, 754. A motion for summary judgment may be granted only if the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966. The burden of showing that there is no genuine issue of material fact is on the mover.
However, because the threat of un-meritorious litigation may have a chilling effect on the constitutionally protected right of free speech, the courts employ a different standard for summary judgment in defamation cases. Wisner v. Harvey, 96-0195 pp. 3-4 (La.App. 1 Cir. 11/8/96), 694 So.2d 348, 349-50. Summary adjudication is a useful procedural tool and an effective screening device for avoiding the unnecessary harassment of defendants in unmeritorious actions which threaten the right of free speech.
For these reasons, the defamation plaintiff who opposes summary judgment bears a more onerous burden of proof than plaintiffs in other | fiactions and must show that he can produce sufficient evidence at trial to prove the elements of the case with convincing clarity. Wright v. Dollar General Corp., 602 So.2d 772, 774-75 (La.App. 2 Cir.), writ denied, 606 So.2d 538 (La.1992). If the plaintiff fails to meet his burden of proof as to any contested element, there is no genuine issue of material fact, and summary disposition of the claim is proper. Sassone v. Elder, 626 So.2d 345, 351 (La.1993).
The five elements of a defamation claim are: (1) defamatory words; (2) publication; (3) falsity; (4) malice, actual or implied; and (5) resulting injury. Ruffin v. Walmart Stores, Inc., 01-0613, p. 2 (La.App. 1 Cir. 5/10/02), 818 So.2d 965, 967, writ denied, 02-1636 (La.9/30/02), 825 So.2d 1200.
“Defamatory words” are those that tend to harm the reputation of another so as to lower the person in the estimation of the community, to deter others from associating or dealing with the person, or otherwise exposes a person to contempt or ridicule. Fitzgerald v. Tucker, 98-2313, p. 11 (La.6/29/99), 737 So.2d 706, 716. Whether a particular statement is objectively capable of having a defamatory meaning is a legal issue to be decided by the court, considering the statement as a whole, the context in which it was made, and the effect it is reasonably intended to produce in the mind of the average listener. Bell v. Rogers, 29,757, p. 5 (La.App. 2 Cir. 8/20/97), 698 So.2d 749 at 754. Thus, in order to determine whether the letter at issue in this case contained defamatory words, we must first look at the context in which the statements were made.
The allegedly defamatory letter was directed to Lisa Whaley, Executive Director of Managed Care Services at Charter Cypress. In her position as Executive Director of Managed Care Services, Mrs. Whaley was|7in charge of all of Charter’s national managed care contracts and accounts, both from the contracting side and the account management side. The contract between Blue Cross/Blue Shield and Charter was negotiated by managed *717 care representatives at the hospital, including Mrs. Whaley. In 1999, Mrs. Wha-ley was in the process of renegotiating the hospital’s contract with Blue Cross/Blue Shield. Mrs. Whaley testified that Charter Corporate had sent her to Lafayette to look into some problems and attempt to fix them.
Mrs. Whaley attended a meeting in 1999 with Blue Cross/Blue Shield and hospital staff in an attempt to resolve problems that had been ongoing for several years concerning high denial rates for psychiatric services. One issue discussed at the meeting was an audit performed by Blue Cross/Blue Shield of patients who had been admitted as psychiatric patients and who Blue Cross/Blue Shield or Health Associates thought should have been admitted as chemical dependency patients. At some point during this discussion of psychiatric versus chemical dependency admissions, things became heated, and Dr. Blackburn left the meeting. Mrs. Whaley testified that the meeting continued and after the meeting was over she expected that if there were future problems with the hospital that Dr. Gengelbach or someone else would contact her about it.
In December of 1999, Dr. Gengelbach contacted Mrs. Whaley concerning a problem with two recent psychiatric admissions of C.L. by Dr. Blackburn. Benefits for these services were denied as not being medically necessary. The letter stated that Drs. Chester and Olivier, as well as a third consultant, Dr. Davis, all independently reviewed C.L.’s chart and felt that her chemical dependency issues were not properly addressed since she had a prominent substance abuse history and a substance abuse evaluation was not | Rperformed until ten days after her admission and only then after repeated requests by the utilization review agency. Pharmacy records indicated that C.L. had been obtaining refills of prescription drugs frequently, even though her surgeries were years ago and her medical conditions seemed to have stabilized. Drs. Chester, Olivier, and Davis noted that there was no Axis II diagnosis noted upon C.L.’s admission, but all agreed that her primary issue was abuse of prescription drugs. They noted that these prescription drugs were continued throughout her inpatient stay and felt that they interfered with the treatment of her depression. Based upon their review of Dr. Blackburn’s treatment of C.L., Drs. Gengelbach, Chester, Olivier, and Davis felt that Dr. Blackburn had failed to ascertain the significance of C.L.’s prescription drug abuse and its relationship to her current problems.
Dr. Gengelbach next pointed out that Blue Cross/Blue Shield’s audit concerning psychiatric admissions that Blue Cross/ Blue Shield felt should have been chemical dependency admissions revealed other cases of this problem with Dr. Blackburn. The record evidence reveals that at least two of the admissions listed in the audit were patients of Dr. Blackburn.
Considering the statement taken as a whole, the context in which it was made, and the effect it is reasonably intended to produce, this court finds that the letter from Dr. Gengelbach to Lisa Whaley was not defamatory. The letter was sent as part of an attempt to resolve an ongoing problem with patients being admitted at Charter as psychiatric patients and then Blue Cross/Blue Shield denying benefits because they believed that the patients should have been admitted as chemical dependency patients. Due to our finding that the statement contained in the letter is not defamatory, there is no genuine issue of material fact as to an essential element of the defamation claim, and therefore summary judgment is appropriate on this |flclaim. The assignments of error relating to the defamation claim are without merit.
*718 We next turn to Dr. Blackburn’s conspiracy claim. La. C.C. art. 2324 provides that one who conspires with another to commit an intentional act is solidarily liable with that person for damages resulting from that intentional act. The actionable element under this code article is not the conspiracy itself, but the underlying intentional tort, which in this case would be defamation. It is unnecessary for us to determine whether a conspiracy actually existed in this ease; since we find that there was no defamatory statement in this case, there can be no recovery for any alleged conspiracy to defame Dr. Blackburn. Thus summary judgment on the conspiracy claim is appropriate in this case.
CONCLUSION
For the reasons stated above, we affirm the judgment of the trial court granting summary judgment and dismissing Dr. Blackburn’s defamation and conspiracy claims with prejudice. All costs of this appeal are assessed to Dr. James Blackburn.
AFFIRMED.
FITZSIMMONS, J., concurs in the result.