KUHN, J.
| ¡.Plaintiff-appellant, Claiborne W. Brown, appeals from a summary judgment dismissing his defamation suit, which he filed as a result of a headline and article written by defendant-appellee, Claire Galo-faro, and published in the newspaper owned by defendant-appellee, The Times-Picayune, L.L.C. For the following reasons, we reverse and remand this matter.

PROCEDURAL AND FACTUAL BACKGROUND

In November 2010, plaintiff was a criminal defense attorney practicing in Coving-ton, Louisiana. At that time, he agreed to act as local co-counsel, together with K. James Phillips, an attorney licensed in Tennessee, in representing Joshua T. Cumberland, who was charged with aggravated rape of his two minor stepchildren.[1] According to plaintiffs petition, he advised Mr. Phillips that he had never handled an aggravated rape case involving a juvenile, and they agreed that plaintiff would proceed “under the active supervision of Mr. Phillips.”
After Mr. Cumberland’s trial date was set for June 11, 2012, plaintiff advised the district attorney’s office by letter dated April 12, 2012, that Mr. Phillips would be unable to attend trial on that date. On June 1, 2012, plaintiff filed a motion to continue the trial based on Mr. Phillips’ inability to be present at trial due to a scheduling conflict, which the trial court denied.'
On the first day of trial, plaintiff again moved for a continuance due to his inability to secure the presence of Mrs. Cumberland, the victims’ mother, as a witness, as well as the lack of time for him to review adequately school records and extensive Office of Child Services records that he had only been granted access to days earlier. The trial court, noting that plaintiff had not followed the ^proper procedure for subpoenaing an out-of-state witness, denied the motion for continuance.
On the second day of trial, plaintiff moved for a mistrial on the grounds that he was not adequately experienced to handle the trial alone and that his representation of Mr. Cumberland was ineffective. He asserted that it had been his understanding with Mr. Phillips that plaintiffs role would only be to do the “legwork” in this matter because Mr. Phillips was the expert in this particular type of criminal ease, which involved potential life sentences. Due to his co-counsel’s absence, plaintiff felt that he was “winging it.” Essentially, plaintiff alleged that he was incapable of providing Mr. Cumberland with an effective defense and, therefore, he refused to participate further in the trial. He advised the trial court that he was willing to accept whatever punitive measures the court felt were necessary.
When the trial court asked plaintiff if there was any reason not to hold him in *667 contempt of court, he replied, “No, your honor.” He apologized to the trial court, but stated, “I can’t continue.” At that point, the trial court held plaintiff in contempt and remanded him to the parish jail until he purged the contempt by proceeding with the trial. When plaintiff failed to do so, the trial court declared a mistrial later that day.[2]
The next day, an article written by Claire Galofaro was published in the Times-Picayune newspaper with the headline: “Defense attorney deserts client midtrial.”[3] (Emphasis added.) The article identified plaintiff by name and detailed his motion for mistrial based on the assertion that he was unqualified to adequately | represent Mr. Cumberland, his refusal to participate further in the trial, and the trial court holding him in contempt as a result. The article further noted the failure of plaintiffs co-counsel to appear, as well as the fact that plaintiff agreed with the opinion expressed by a consultant hired by Mr. Cumberland’s family to observe plaintiffs trial performance that plaintiff was incompetent to represent Mr. Cumberland in this matter. However, the article failed to mention plaintiffs prior attempts to have the trial continued due to the inability of his co-counsel to attend trial.
Subsequently, plaintiff filed this defamation suit against defendants, alleging that the article headline was maliciously false and defamatory in the extreme. Defendants responded by filing a motion for summary judgment to dismiss plaintiffs claims, asserting that both the headline and the facts set forth in the accompanying Times-Picayune article were true. On that basis, defendants contend that plaintiff cannot satisfy his burden of proving the essential element of falsity. The trial court agreed and dismissed plaintiffs suit, with prejudice. Plaintiff now appeals, arguing in three assignments of error that the trial court erred in applying a heightened burden of proof in this case and in holding that the headline and article were accurate.

DISCUSSION

On appeal of a summary judgment, an appellate court conducts a de novo review based on the evidence presented at the trial court and utilizing the same criteria used by the trial court in determining whether a summary judgment should be granted. Blackburn v. Gengelbach, 03-0739 (La.App. 1st Cir.2/23/04), 873 So.2d 713, 716, writ denied, 04-0766 (La.5/7/04), 872 So.2d 1088. A motion for summary judgment may be granted only if the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine issue of | ¡¡material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B)(2).
The burden of showing that there is no genuine issue of material fact is on the movant. However, if the movant will not bear the burden of proof at trial, he need not negate all essential elements of the adverse party’s claim, but he must point out that there is an absence of factual support for one or more elements essential to the claim. La. C.C.P. art. 966(C)(2). *668 Once the movant has met his initial burden of proof, the burden shifts to the non-moving party to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial.[4] If the non-moving party fails to meet this burden, there is no genuine issue of material fact, and the movant is entitled to summary judgment as a matter of law. La. C.C.P. art. 966(C)(2); Schultz v. White, 10-0488 (La.App. 1st Cir.10/29/10), 50 So.3d 949, 952-953.
| (¡Because of the chilling effect on the exercise of free speech, defamation actions have been found particularly susceptible to summary judgment. Kennedy v. Sheriff of East Baton Rouge, 05-1418 (La.7/10/06), 935 So.2d 669, 686. Summary judgment, being favored in the law, is a useful procedural tool and an effective screening device to eliminate the unmeritorious defamation actions that threaten the exercise of First Amendment rights. See Kennedy, 935 So.2d at 686.
The essential elements of a defamation claim are: (1) defamatory words; (2) publication; (3) falsity; (4) malice, actual or implied; and (5) resulting injury. Blackburn, 873 So.2d at 716. “Defamatory words” are those that tend to harm the reputation of another so as to lower the person in the estimation of the community, to deter others from associating or dealing with the- person, or otherwise exposes a person to contempt or ridicule. Whether a particular statement is objectively capable of having a defamatory meaning is a legal issue to be decided by the court, considering the statement as a whole, the context in which it was made, and the effect it is reasonably intended to produce in the mind of the average listener. Blackburn, 873 So.2d at 716.
In this case, defendants’ motion for summary judgment is based on their contention that plaintiff cannot satisfy his burden of proving the essential element of falsity because the headline at issue, as well as the accompanying article, accurately describes plaintiffs actions and is substantially true. They argue that plaintiffs refusal to continue his participation in the *669 trial, even after the trial court ordered him to do so, is clearly encompassed in the definition of “desert.” Defendants define the term “desert” as “to withdraw from or leave [usually] without intent to return” and “to quit one’s post, allegiance or service without leave |7or justification.”[5] Given this definition and the undisputed fact that plaintiff refused to continue his participation in the trial, defendants argue that “it cannot be said that the headline was not substantially true.”
We disagree because our de novo review reveals that the trial court erred in granting summary judgment in this case. The defendants’ headline proclaimed that plaintiffs client was “deserted” by his attorney, who was identified in the accompanying article as plaintiff. Beyond any doubt, an attorney’s paramount duty is to his client. Teague v. St. Paul Fire and Marine Ins. Co., 07-1384 (La.2/1/08), 974 So.2d 1266, 1271. Consequently, the characterization of plaintiffs conduct as a desertion of his client strikes at the very heart of his ethical duties and obligations to his client. In Hodges v. Reasonover, 12-0043 (La.7/2/12), 103 So.3d 1069, 1073, cert. denied, — U.S. -, 133 S.Ct. 1494, 185 L.Ed.2d 548 (2013), the Supreme Court explained the special nature of the relationship between attorney and client, as follows:
“The relation of attorney and client is more than a contract. It superinduces a trust status of the highest order and devolves upon the attorney the imperative duty of dealing with the client on the basis of the strictest fidelity and honor.” Teague v. St. Paul Fire and Marine Ins. Co., 07-1384 (La.2/1/08), 974 So.2d 1266, 1271 (citations omitted). “In no other agency relationship is a greater duty of trust imposed than in that involving an attorney’s duty to his client.” Id. An attorney is also bound by the ethical requirements set forth in the Louisiana Rules of Professional Conduct, which have the force of substantive law.
Regardless of the dictionary definition of “desert,” the extreme negative connotations resulting in this case from the use of the term “desert” in the mind of the average person cannot be overlooked. In going about his everyday activities, 1 ^including reading a newspaper article, the average person does not make constant references to a dictionary. See Forrest v. Lynch, 347 So.2d 1255, 1258 (La.App. 1st Cir.), writ denied, 351 So.2d 168 (La.1977), cert. denied, 435 U.S. 971, 98 S.Ct. 1612, 56 L.Ed.2d 63 (1978). In common usage, to say that someone has deserted another to whom one owes a duty or obligation is exceedingly derogatory, lowering the “deserter” in the estimation of the community and exposing him to contempt. In this case, the disparaging headline indisputably was prejudicial to plaintiffs professional reputation as an attorney as it implied that he had disregarded the interests of his client and failed in his duty of representing his client with the highest fidelity, honor, and trust, which are all essential elements of a lawyer’s relationship to his client.[6] See Teague, 974 So.2d at 1271.
Furthermore, the characterization of plaintiffs actions as a desertion of his client did not accurately or substantially *670 reflect what occurred. According to plaintiffs affidavit, he had never acted as lead counsel or performed substantial work on any juvenile sexual assault cases such as the Cumberland case. Moreover, Mr. Cumberland faced multiple potential life sentences if convicted. Once plaintiff learned that co-counsel from Tennessee, who was supposed to be lead counsel, would be unable to attend the trial, he notified the state and filed a motion to continue, which the trial court denied. On the first day of trial, plaintiff again attempted to obtain a continuance based on his inexperience and his feeling incapable of acting as lead counsel in this type of trial. In denying a continuance, | nthe trial court specifically noted that plaintiff had failed to properly subpoena an out-of-state witness. .
Rules of Professional Conduct, Rules 1.1 and 1.3 require a lawyer to “provide competent representation to a client” and to “act with reasonable diligence.” Teague, 974 So.2d at 1271. In view of these duties, plaintiff was faced with a quandary when the trial court denied his motions for continuance. In view of his inability to perform at the level required of lead counsel, his lack of experience in sexual assault cases involving juveniles, and the potential life sentences Mr. Cumberland faced if convicted, plaintiff concluded he could no longer provide his client with competent representation. Mindful of his paramount duty to his client, plaintiff refused to participate further in the trial, even knowing that he could be held in contempt of court, jailed, and sanctioned for refusing to do so, all of which actually occurred. Under these circumstances, it is clear that rather than deserting his client as stated in the Times-Picayune headline, and further implied throughout the article, plaintiffs actions actually were an attempt to protect his client’s interests and to adhere to the paramount fiduciary duty he owed to his client under the Rules of Professional Conduct. Hence, it was grossly inaccurate and defamatory for the headline to characterize plaintiffs conduct as a desertion of his client.
Based on our review, we find that plaintiff has produced sufficient evidence to demonstrate he will be able to prove the element of falsity at trial. Accordingly, the trial court erred in granting summary judgment dismissing plaintiffs suit.

CONCLUSION

For the above reasons, we reverse the summary judgment granted by the trial court in favor of defendants-appellees, The Times-Picayune, L.L.C. and Claire Galofa-ro, and against the plaintiff-appellant, Clarence W. Brown, dismissing plaintiffs defamation suit. This matter is remanded to the trial court for further | T (¡proceedings consistent with this opinion. All costs of this appeal are assessed to defendants-appellees.
REVERSED AND REMANDED.

. The mandatory penalty for aggravated rape is life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. La. R.S. 14:42(D).

. Subsequently, the trial court sentenced plaintiff for his contempt to two hours in parish jail (the amount of time he had already served), placed him on six months supervised probation, and ordered him to pay $1,559.17 for jury and court expenses related to the mistrial, as well as the monthly fee for his probation.

. According to plaintiff's petition, the article was also published on the Times-Picayune’s website with the slightly different headline: "St. Tammany Parish Attorney Deserts Rape Suspect Mid Trial.’’

. In brief, plaintiff contends that the trial court erred in applying a heightened burden of proof to him, because the jurisprudence imposing such a burden on defamation plaintiffs was legislatively superseded by the enactment of La. C.C.P. art. 971, which provides for a special motion to strike in defamation cases. Article 971 was enacted in 1999 as a procedural device to be used early in legal proceedings to screen out meritless claims brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for redress of grievances. Lamz v. Wells, 05-1497 (La.App. 1st Cir.6/9/06), 938 So.2d 792, 796. In this case, defendants chose not to file a motion to strike under Article 971. In any event, the burden of proof applied by the trial court is irrelevant in light of this Court's de novo review of the defendants’ motion for summary judgment. Nevertheless, plaintiff is correct (albeit on different grounds) in asserting that a defamation plaintiff, in order to survive a motion for summary judgment, is no longer required to produce evidence of sufficient quality and quantity to demonstrate that he likely will be able to meet his burden of proof at trial with convincing clarity. In Kennedy, 935 So.2d at 686 n. 17, the Supreme Court explained that:
In Sassone v. Elder, 626 So.2d 345 (La.1993), we held thát the summary judgment standard is different in defamation cases than in other cases; in order to survive a motion for summary judgment, a defamation plaintiff must produce evidence of sufficient quality and quantity to demonstrate that he likely will be able to meet his burden of proof at trial.
Since our decision in Sassone, the legislature has amended the summary judgment articles, 1996 La. Acts, 1st Ex.Sess., No. 9, with the result that summary judgment is now favored, thereby eliminating the need for courts to impose a different summary judgment standard in defamation cases. Nevertheless, the considerations that make defamation actions particularly susceptible to summary judgment remain the same.

. This definition is derived, in part, from the definition of "desert” quoted in plaintiff's petition and attributed to Webster’s Dictionary. The full definition is delineated by plaintiff as follows:
1. to withdraw from or leave [usually] without intent to return 2. a: to leave in the lurch < "a friend in trouble > b. to abandon (military service) without leave ~vi: to quit one’s post, allegiance, or service without leave or justification; [especially ]: to absent oneself from military duty without leave and without intent to return.

. The use of the term “desert” arguably could be construed as being defamatory per se since by its very nature it tends to damage plain *670 tiff's professional reputation, even without considering extrinsic facts or surrounding circumstances. When a plaintiff proves publication of words that are defamatory per se, the essential elements of falsity and malice (or fault) are presumed, although the presumption may be rebutted by the defendant. Further, the element of injury may also be presumed. See Costello v. Hardy, 03-1146 (La.1/21/04), 864 So.2d 129, 140; Hornot v. Cardenas, 07-1489 (La.App. 1st Cir.6/20/08), 2008 WL 2484913 (unpublished), writ denied, 08-2131 (La.9/26/08), 992 So.2d 996, cert. denied, 556 U.S. 1105, 129 S.Ct. 1584, 173 L.Ed.2d 676 (2009). It is unnecessary, however, to determine this issue since summary judgment was inappropriate herein regardless of whether the headline is defamatory per se or merely susceptible to a defamatory meaning.