McClendon, j.
| ¡¿Martin E. Regan, Jr., filed the underlying suit for defamation, alleging that an assistant attorney general made false and defamatory statements about Regan to a newspaper. The defendants in the defamation action, the state’s attorney general, the office of the attorney general, and the assistant attorney general who made the statements, filed Special Motions to Strike as authorized by LSA-C.C.P. art. 971. The trial court granted the defendants’ motions and dismissed Regan’s claims. Regan has appealed. For the following reasons, we affirm the trial court’s judgment.
FACTS AND PROCEDURAL HISTORY
The underlying facts, giving rise to this litigation relate to multiple criminal indictments issued to St. Bernard Parish President David Peralta. Plaintiff, Martin E. Regan, Jr., is one of Peralta’s attorneys.
On May 6, 2015, an East Baton Rouge Parish grand jury issued a six-count indictment against Mr. Peralta, charging him with three counts of perjury and three counts of filing false public records. This indictment was based on allegations that Mr. Peralta withdrew money from campaign donations and used the funds to gamble at various casinos.[1] The East Baton Rouge Parish District Attorney’s Office requested the assistance of the Office of the Attorney General in its prosecution of Mr. Peralta, and Assistant Attorneys General David Caldwell, Jr., and Molly Lancaster were present at the May 6, 2015, indictment proceeding in Baton Rouge.[2]
*124 In a subsequent article published' by the New Orleans Advocate on May 21, 2015, the newspaper indicated that Mr. Peralta’s attorney, Regan, had sought to have Mr. Peralta’s charges dismissed, alleging that Mr. Peralta’s civil rights had been violated by the Attorney General’s office in prosecuting the case. Specifically, Regan indicated that Mr. Peralta had not been allowed to finish his testimony in the grand jury ^proceeding and that Mr. Peralta was denied certain pertinent documents during his grand jury testimony.
In his response to Regan’s allegations in the newspaper, Assistant Attorney General Caldwell told the paper that “Regan’s latest claims [were] ‘a complete waste of time.’” The article, based largely upon statements made by Caldwell, also provided:
Caldwell said Regan deliberately caused a scene outside the grand jury room, growing agitated and cursing loudly at him and' Assistant Attorney General ■ Molly Lancaster about the documents. Peralta contends the documents would explain' discrepancies on his campaign : spending1 reports, but- they were -seized—along with his computer—during a raid last summer by the Attorney General’s Office.
Regan “was threatening my female assistant, and then I came out to see what was going on, and he threatened me and he told me to step outside,” Caldwell -sáid.' “At that point, we have to shut it down. That was intentional on his part.” Caldwell said Regan was “dropping F-bombs” on Lancaster, likely close enough to the grand jury that its members could hear him, Regan “just blew his top,” he said.
“He was pretty hot,” Caldwell added. “I’m bigger than him, and I’m younger than him, but he was hot,. and if I had gotten close to him, he might’ve taken a swing at me.”
In his response published in the same article, Regan called Caldwell a “liar,” maintaining that he “didn’t lose his cool and certainly never swore-at anybody.”
On September 9, 2015, Regan filed a petition in the 19th Judicial District Court for the Parish of East Baton Rouge, naming Assistant Attorney General Caldwell, the state’s Attorney General,- and the state’s Office of the Attorney General, as defendants.[3] Regan alleged that the statements made by Caldwell to the newspaper were not truthful, and he sought damages for defamation. In response, the defendants each filed a Special Motion to Strike under LSA-C.C.P. art. 971 and sought dismissal of Regan’s petition.
A hearing on the Special Motions to Strike was held on December 14, 2015. Following the hearing, the trial court orally granted the motions. On January 20, 2016, the trial court signed a judgment granting the motions to strike, dismissing Regan’s suit with prejudice at his cost, and awarding Assistant Attorney General Caldwell $3,000.00 pin attorney’s fees, and the state’s Attorney General and Office of the Attorney General $3,000.00 in attorney’s fees.
Regan has appealed, assigning the following as error:
1. The trial court committed legal and reversible error by failing to apply *125 the proper legal standard and analysis necessary to support the granting of a special motion to strike filed pursuant to La. C.C.P. Art. 971.
2. The trial court committed legal and reversible error by finding, as a matter of law, that AAG Caldwell’s defamatory comments regarding Mr. Regan’s conduct during the Proceeding were protected under the United States and/or Louisiana Constitutions.
3. The trial court committed legal and reversible error by finding, as a matter of law, that Mr. Regan did not prove a substantial likelihood of success in prosecuting his claims.
4. The trial court committed legal and reversible error in finding that the AG Defendants were entitled to absolute or conditional privilege.
DISCUSSION
The special motion to strike is governed by LSA-C.C.P. art. 971, which provides, in pertinent part:
A. (1) A cause of action against a person arising from any act of that person in furtherance of the person’s right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established a probability of success on the claim.
(2) In making its determination, the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based.
(3) If the court determines that the plaintiff has established a probability of success on the claim, that determination shall be admissible in evidence at any later stage of the proceeding.
B. In any action subject to Paragraph A of this Article, a prevailing party on a special motion to strike shall be awarded reasonable attorney fees and costs. .
⅜ ⅜ ⅜
F. As used in this Article, the following terms shall have the meanings ascribed to them below, unless the context clearly indicates otherwise:
(1) “Act in furtherance of a person’s right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue” includes but is not limited to:
|fi(a) Any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law.
(b) Any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official body authorized by law.
(c) Any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest.
(d) Any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.
Article 971 was enacted by Acts 1999, No. 734, § 1. Section 2 of Acts 1999, No. 734 provides as follows:
The legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for redress of grievances. The legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be *126 chilled through abuse of the judicial process. To this end, it is the intention of the legislature that the Article enacted pursuant to this Act shall be construed broadly.
The intent of Article 971 is to encourage continued participation in matters of public significance and to prevent this participation from being chilled through an abuse of judicial process. Lamz v. Wells, 05-1497 (La.App. 1 Cir. 6/9/06), 938 So.2d 792, 796. In Thinkstream, Inc. v. Rubin, 06-1595 (La.App. 1 Cir. 9/26/07), 971 So.2d 1092 writ denied, 07-2113 (La. 1/7/08), 973 So.2d 730, this court explains the shifting burdens of proof established by Article 971. The mover must first establish that the cause of action against him arises from an act by him in the exercise of his right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue. If the mover satisfies this initial burden of proof, the burden then shifts to the plaintiff to demonstrate a probability of success on the claim. Thinkstream, 971 So.2d at 1100.
The granting of a special motion to strike presents a question of law. Appellate review regarding questions of law is simply a review of whether the trial court was legally correct or legally incorrect. Thinkstream, 971 So.2d at 1100. On legal issues, the appellate court gives no special weight to the findings of the trial court, but1 ^exercises its constitutional duty to review questions of law and renders judgment on the record. Id. Because the granting of a Special Motion to Strike pursuant to LSA-C.C.P. art. 971 involves issues of law, appellate courts conduct a de novo review of the trial court’s application of the law. Aymond v. Dupree, 05-1248 (La.App. 3 Cir. 4/12/06), 928 So.2d 721, 726, writ denied, 06-1729 (La. 10/6/06), 938 So.2d 85.
On appeal, Regan contends that Article 971 does not apply because Assistant Attorney General Caldwell’s statements were not made in furtherance of his right to free speech in connection with a public issue. Regan concedes that the actions of his client, Mr. Peralta, certainly constitute a public issue because the public has an interest in knowing whether a Parish President’s conduct is proper. Regan, however, avers that Caldwell’s statements to the newspaper concern Regan’s conduct and character during a non-public grand jury proceeding and that Caldwell’s statements do not fall within the purview of Article 971. Regan contends that a contrary interpretation of the article to protect Caldwell’s statements regarding the conduct and character of counsel contravenes the Legislature’s intent.
Clearly, as recognized by Regan and the trial court, the proceedings against Mr. Peralta involved a public issue or an issue of public interest. Also, the statements made by the Assistant District Attorney to the newspaper involved purported actions in connection with the proceedings in which Regan was representing Mr. Peral-ta. As such, these statements were made “in connection with a public issue or an issue of public interest.” Given the legislative directive that the article is to be interpreted broadly, we find no error in the trial court’s determination that LSA-C.C.P. art. 971 applies.
Because the defendants met their initial burden of proof to establish that the cause of action against them arose from an act in the exercise of free speech in connection with a public issue, the burden shifted to Regan to demonstrate a probability of success on the claim. See Thinkstream, 971 So.2d at 1100-01.
A cause of action for defamation arises out of a violation of LSA-C.C. art. 2315. Defamation involves the invasion of a person’s interest in his or her reputation *127 and good name. Fitzgerald v. Tucker, 98-2313 (La. 6/29/99), 737 So.2d 706, 716. To maintain an action for defamation, plaintiffs have the burden of proving: (1) defamatory |7words; (2) unprivileged publication; (3) falsity; (4) actual or implied malice; and (6) resulting injury. Lamz, 938 So.2d at 797. If even one of these required elements is lacking, the cause of action fails. Costello v. Hardy, 03-1146 (La. 1/21/04), 864 So.2d 129, 140. See Thinkstream, 971 So.2d at 1101.
The defendants assert that after the burden shifted, Regan faded to show, among other things, that Assistant Attorney General Caldwell’s statements were false or made with malice. When the words at issue are not defamatory per se, a plaintiff must prove, in addition to defamatory meaning and publication, the elements of falsity, malice (or fault) and injury. Costello, 864 So.2d at 140. Further, in cases involving statements about a public figure or a matter of public concern, the plaintiff must prove actual malice, that is, that the defendant either knew the statement was false or acted with reckless disregard for the truth. Romero v. Thomson Newspapers (Wisconsin), Inc., 94-1106 (La. 1/17/95), 648 So.2d 866, 869-70. Even so, we note that the elements of malice, falsity, and injury, are presumed if the court determines that a statement is defamatory per se. Kennedy v. Sheriff of East Baton Rouge, 05-1418 (La. 7/10/06), 935 So.2d 669, 675. Words are defamatory per se if they expressly or implicitly accuse another of criminal conduct, or by their very nature, tend to injure one’s personal or professional reputation, without considering extrinsic facts or circumstances. Kennedy, 935 So.2d at 675 (citing Costello, 864 So.2d at 140). In other words, if they impute to a person a crime; or subject him to public ridicule, ignominy, or disgrace; or are susceptible of but one meaning, they are defamatory per se. Elmer v. Coplin, 485 So.2d 171, 176 (La.App. 2 Cir.) writ denied, 489 So.2d 246 (La. 1986). Words that are merely susceptible of a defamatory meaning, however, are not defamatory per se. Id.
Regan contends that the Assistant Attorney General’s statements made to the newspaper are defamatory per se such that malice, falsity, and injury are presumed. Specifically, Regan contends that the following statements, by their very nature, tend to damage his professional reputation as an attorney: Caldwell’s statements that Regan’s claims in defense of his client were “a complete waste of time,” that Regan threatened both Lancaster and Caldwell, that Regan was cursing and “dropping F-bombs,” and that IsCaldwell believed Regan, if he were close enough, “might’ve taken a swing at [him].” However, we note the threats referred to were limited to verbal threats.
Even though the statements made, if proven, may tend to diminish Regan’s professional reputation, they are not the type of words which would by their very nature tend to injure one’s professional reputation without considering extrinsic facts or surrounding circumstances. See Costello, 864 So.2d at 141. They are not words which in the current moral fabric of our modern society would by their very nature impute to Regan immoral, scandalous, or shocking conduct absent consideration of the surrounding events or the context in which they were made. As such, we cannot conclude that these statements rise to the level of defamation per se.[4]
*128 Thus, to demonstrate a likelihood of success on his claim, Regan must establish, among other things, that he can prove the allegations are false. No such admissible evidence appears in the record. We note that Regan made allegations in his petition that the statements were untruthful, but there is no affidavit or other admissible evidence[5] in the record to support this allegation. Also, while both parties reference an affidavit apparently relied upon by Regan, such affidavit is not contained in the appellate record; nor is there any indication that it was offered and introduced into evidence. Moreover, argument of counsel and briefs, no matter how artful, are not evidence. See Wilson v. Davis, 07-1929 (La.App. 1 Cir. 5/28/08), 991 So.2d 1052, 1063, writs denied, 08-2011, 082020 (La. 11/10/08), 996 So.2d 1070, 996 So.2d 1071. Because Regan has failed to introduce evidence to show that he can establish the | ¡¡element of falsity, he has not sustained his burden to show a likelihood of success on his claim. Accordingly, we find no error in the trial court’s grant of the special motions to strike.
CONCLUSION
For the foregoing reasons, we affirm the trial court’s January 20, 2016 judgment. Costs of this appeal are assessed to appellant, Martin E. Regan, Jr.
AFFIRMED.
GUIDRY, J., dissents and assigns reasons.

. According to the defendants, there were other indictments issued by grand juries on charges not relevant herein, two in St. Bernard Parish and one in St. Tammany Parish.

. Louisiana Constitution article IV, section 8 provides that “[a]s necessary for the assertion or protection of any right or interest of the state, the attorney general shall have authority (1) to institute, prosecute, or intervene in any civil action or proceeding; (2) upon the written request of a district attorney, to advise and assist in the prosecution of a criminal case; and (3) for cause, when authorized by *124 the court which would have original jurisdiction and subject to judicial review, (a) to institute, prosecute, or intervene in any crimi-nál action or proceeding, or (b) to supersede any attorney representing the state in any civil or criminal action.”

. The defendants aver that Regan initially filed his petition with the Orleans Parish Civil District Court, and the matter was later transferred to the Parish of East Baton Rouge,

. In Costello, 864 So.2d at 142, the Louisiana Supreme Court, in concluding that the allegations made against an attorney were not defamatory per se, stated that the allegations did not accuse the attorney "of serious unprofessional conduct or extreme departure from *128 professional ethics.” However, the Louisiana Supreme Court did not indicate that such allegations would necessarily rise to the level of defamatory per se, and the statement was not essential to the court’s holding. In cases where statements were found to rise to the level of defamation per se, the allegations encompassed more than allegations of unprofessional conduct. For instance, in Brown v. Times-Picayune, L.L.C., 14-0160 (La.App. 1 Cir. 11/3/14), 167 So.3d 665, 669 and n.6, this court indicated that a newspaper headline accusing an attorney of ‘‘desertfing)” his client "could be construed as being defamatory per se since by its very nature it tends to damage plaintiff’s professional reputation, even without considering extrinsic facts or surrounding circumstances” because it "strikes at the very heart of [the attorney's] ethical duties and obligations to his client.”) In the case before us, none of the allegations could be construed as accusing Regan of an extreme departure from professional ethics.

. Regan attached the results of a polygraph test to his petition. However, the defendants objected to the admission of the results of the polygraph test at the motion to strike hearing, and they were properly excluded by the trial court. See Cook v. State, Dept. of Public Safety and Corrections, Office of State Police, 05-0475 (La.App. 1 Cir. 2/10/06), 928 So.2d 589, 592 (“The exclusion of polygraph evidence in civil trials has consistently been upheld in both state and federal jurisdictions, and we find no authority to allow this evidence to be admitted.”)