# STATE OF LOUISIANA

## COURT OF APPEAL

### FIRST CIRCUIT

### 2019 CA 1401

### DAVID LACERTE

### VERSUS

### STATE OF LOUISIANA, DARYL PURPERA, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS LOUISIANA LEGISLATIVE AUDITOR, STEPHEN STREET, JR., INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS STATE INSPECTOR GENERAL

**Judgment Rendered:** JAN 0 4 2021

On Appeal from the Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Docket No. 654973

Honorable William A. Morvant, Judge Presiding

| | |
|---|---|
| Jill L. Craft<br>W. Brett Conrad<br>Baton Rouge, Louisiana | Counsel for Plaintiff/Appellant,<br>David LaCerte |
| Jeff Landry, Louisiana Attorney General<br>Baton Rouge, Louisiana<br>/and/<br>Andre Charles Castaing<br>David G. Sanders<br>Baton Rouge, Louisiana<br>/and<br>Thomas M. Flanagan<br>Camille E. Gauthier<br>New Orleans, Louisiana | Counsel for<br>Defendants/Appellees, State of<br>Louisiana & Daryl G. Purpera,<br>individually & in his official<br>capacity as Louisiana<br>Legislative Auditor |
| Jeff Landry, Louisiana Attorney General<br>Baton Rouge, Louisiana<br>/and/<br>Preston J. Castille, Jr.<br>Vicki M. Crochet<br>Ne'Shira Millender<br>Katia D. Bowman<br>Baton Rouge, Louisiana | Counsel for<br>Defendant/Appellee, Stephen<br>Street, Jr., individually & in<br>his official capacity as State<br>Inspector General |

BEFORE: WHIPPLE, C.J., GUIDRY, WELCH, THERIOT AND WOLFE, JJ.

*Whipple, C.J. concurs in part and dissents in part and assigns reasons.*

*Theriot, J. agrees in part and dissents in part for the reasons assigned by C.J. Whipple.*

**WOLFE, J.**

This appeal primarily concerns whether the State of Louisiana, the Louisiana Legislative Auditor and the State Inspector General have constitutionally protected rights to freedom of speech such that these defendants can satisfy their initial burden of proof under La. Code Civ. P. art. 971, Louisiana's special motion to strike.

For the foregoing reasons, we find these defendants cannot, as a matter of law, demonstrate that their speech was constitutionally protected and, thus, cannot satisfy the threshold requirements of Article 971. We reverse the trial court's judgment that granted the defendants' Article 971 motion and denied the plaintiff's "Expedited Motion to Strike" the defendants' Article 971 motion. We likewise deny the relief sought by the defendants in their answer to the appeal.

## FACTS AND PROCEDURAL HISTORY

David LaCerte, a former United States Marine, served as Secretary of the Louisiana Department of Veterans Affairs from June 2014 to October 2015. Prior to this, Mr. LaCerte served as Interim Secretary and Deputy Secretary of the Department.

On January 31, 2017, Mr. LaCerte filed a defamation suit against Daryl Purpera, individually and in his official capacity as Louisiana Legislative Auditor; Stephen Street, Jr., individually and in his official capacity as State Inspector General; and the State of Louisiana. Mr. LaCerte's defamation cause of action arises out of a joint investigation conducted by the Legislative Auditor and the Inspector General that culminated in a report published by the defendants, via a press release, on February 1, 2016. Mr. LaCerte alleges that the report and press release wrongfully accused him of criminal conduct, including falsifying public records by providing an inaccurate military biography on the Department's website and engaging in "questionable" hiring, spending, travel and organizational practices during his tenure with the Department.

2

After answering the petition, Mr. Purpera, individually and in his official capacity, filed an exception of no cause of action based on legislative immunity. The exception was granted as to the claim for defamation arising out of the joint investigation report but was denied as to claims arising out of the press release. Mr. Purpera's writ application to this court was denied on May 14, 2018. **David LaCerte v. State of Louisiana, Daryl Purpera, individually and in his official capacity as Louisiana Legislative Auditor, Stephen Street, Jr., individually and in his official capacity as State Inspector General**, 2017-1727 (La. App. 1st Cir. 5/14/18), (unpublished writ action) 2018 WL 2202302. The Louisiana Supreme Court likewise denied Mr. Purpera's writ application on October 8, 2018. **David LaCerte v. State of Louisiana, Daryl Purpera, individually and in his official capacity as Louisiana Legislative Auditor, Stephen Street, Jr., individually and in his official capacity as State Inspector General**, 2018-0966 (La. 10/8/18), 253 So.3d 792.

Shortly thereafter, on October 30, 2018, the defendants filed a joint special motion to strike pursuant to La. Code Civ. P. art. 971. The defendants moved to dismiss Mr. LaCerte's suit for defamation in its entirety, against all defendants in their individual and official capacities, asserting that he cannot meet his burden of proving a likelihood of success on the merits of his defamation claim. As an alternative to their request for complete dismissal, the defendants asserted an exception raising the objection of no cause of action to dismiss Mr. LaCerte's claims against Mr. Street and Mr. Purpera in their individual capacities.[1]

---

[1] The exception was raised in the defendants' pleading titled "Defendants' Joint Special Motion to Strike Pursuant to Louisiana Code of Civil Procedure Article 971." It is well-settled that courts should look through the caption of pleadings to ascertain their substance and to do substantial justice to the parties. **Southeastern Louisiana University v. Cook**, 2012-0021 (La. App. 1st Cir. 9/21/12), 104 So.3d 124, 127-8. Looking beyond the document's title, it is evident that the defendants sought to dismiss Mr. LaCerte's individual capacity claims via an exception of no cause of action. In the memorandum in support of the motion, the defendants set forth the legal principles concerning the exception of no cause of action and assert that, accepting the facts set forth in Mr. LaCerte's petition as true, the petition "fails to sufficiently allege any wrongdoing by Defendants in their individual capacities." Thus, the defendants urged "the exception should be sustained and

3

Mr. LaCerte opposed the defendants' Article 971 motion and filed an "Expedited Motion to Strike." Mr. LaCerte argued that the defendants' motion, filed more than twenty months from the date of service of the petition, was untimely per Article 971(C)(1), which provides, in part, that a motion may be filed within ninety days of service of the petition. Mr. LaCerte further argued that the State as well as Mr. Street and Mr. Purpera in their official capacities have no constitutional rights and, thus, are not "persons" for purposes of Article 971. Accordingly, Mr. LaCerte maintained that these defendants are not entitled to relief on their special motion to strike.

A hearing on the defendants' Article 971 motion as well as Mr. LaCerte's motion to strike was held on April 29, 2019. After first hearing argument on Mr. LaCerte's motion, the trial court ruled in favor of the defendants, finding the special motion to strike was timely filed in light of the case's procedural history and rejecting Mr. LaCerte's argument that the State and official capacity defendants are not "persons" for purposes of Article 971. The court thereafter heard argument on the defendants' Article 971 motion before granting the motion from the bench and providing oral reasons for ruling.

A written judgment was signed in conformity with the trial court's rulings, and this appeal by Mr. LaCerte followed. Mr. LaCerte maintains that the trial court erred by denying his motion to strike and by granting the defendants' Article 971 motion.[2] The defendants answered the appeal, seeking an award of attorney's fees pursuant to Article 971(B) for the work done in connection with the appeal.

---

the claims against Daryl Purpera and Stephen Street in their individual capacities should be dismissed with prejudice."

[2] In light of the result reached herein, we decline to consider the merits of Mr. LaCerte's argument that the trial court erred in granting the defendants' Article 971 motion "where plaintiff requested discovery prior to [the] hearing [on] the Motion and, significantly, identified good cause" to conduct discovery.

4

## LAW AND ANALYSIS

Louisiana Code of Civil Procedure Article 971 provides, in pertinent part,

A.    (1) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established a probability of success on the claim.

(2) In making its determination, the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based.

\* \* \*

C.    (1) The special motion may be filed within ninety days of service of the petition, or in the court's discretion, at any later time upon terms the court deems proper.

\* \* \*

D. All discovery proceedings in the action shall be stayed upon the filing of a notice of motion made pursuant to this Article. The stay of discovery shall remain in effect until notice of entry of the order ruling on the motion. Notwithstanding the provisions of this Paragraph, the court, on noticed motion and for good cause shown, may order that specified discovery be conducted.

\* \* \*

F. As used in this Article, the following terms shall have the meanings ascribed to them below, unless the context clearly indicates otherwise:

(1) "Act in furtherance of a person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue" includes but is not limited to:

\* \* \*

(b) Any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official body authorized by law.

(c) Any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest.

\* \* \*

A shifting burden of proof applies to an Article 971 motion. First, the mover must establish that the cause of action against him arises from an act by him in the exercise of his right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue. If the mover satisfies this initial burden of proof, the burden then shifts to the plaintiff to demonstrate a probability of success on the claim. **Regan v. Caldwell**, 2016-0659 (La. App. 1st Cir. 4/7/17), 218 So.3d 121, 126, *writ denied*, 2017-0963 (La. 4/6/18), 239 So.3d 827. The granting of a special motion to strike presents a question of law. Appellate review

5

regarding questions of law requires a *de novo* review to determine whether the trial court was legally correct or incorrect. On legal issues, the appellate court gives no special weight to the findings of the trial court, but exercises its constitutional duty to review questions of law and renders judgment on the record. **Id.**

Both parties attached exhibits to their memoranda in support of and in opposition to the defendants' Article 971 motion; however, the transcript and minutes from the April 2019 hearing reflect that neither party introduced those exhibits into evidence during the hearing. Evidence attached to memoranda but not properly and officially offered and introduced cannot be considered on appeal, even if it is physically placed in the record. **Denoux v. Vessel Management Services, Inc.,** 2007-2143 (La. 5/21/08), 983 So.2d 84, 88. Documents attached to memoranda do not constitute evidence and cannot be considered as such on appeal. **Landis Construction Company, L.L.C. v. State**, 2015-1167 (La. App. 1st Cir. 2/29/16), 199 So.3d 1, 2-3. An appellate court must render its judgment upon the record on appeal and may not rely on the arguments in brief by either party in determining the facts of the matter before it. *See* La. Code Civ. P. art. 2164; **Save Our Hills v. Louisiana Department of Environmental Quality**, 2018-0100 (La. App. 1st Cir. 11/5/18), 266 So.3d 916, 926, *writ denied*, 2019-0057 (La. 3/18/19), 267 So.3d 87. Thus, our review is limited to the pleadings properly included in the record. *See* **Rathe v. Rathe**, 2017-1326 (La. App. 1st Cir. 8/21/18), 256 So.3d 1001, 1007 ("The record on appeal is that which is sent by the trial court to the appellate court and includes the pleadings, court minutes, transcript, jury instructions, judgments and other rulings, unless otherwise designated.")

### Timeliness

On appeal, Mr. LaCerte contends that the trial court erred by considering the defendants' Article 971 motion because it was filed more than ninety days from service of the petition. We find no merit in this argument.

Most notably, Article 971(C)(1) uses the discretionary "may," rather than the mandatory "shall," to establish the ninety-day filing period. La. Code Civ. P. art. 5053 (The word "shall" is mandatory, and the word "may" is permissive.) Furthermore, the trial court is expressly given discretion to consider a motion filed beyond the ninety-day period.[3] *See* **BCCL Enterprises, Inc. v. Rizzo**, 2013-1624 (La. App. 1st Cir. 8/20/14), (unpublished) 2014 WL 4102467, *2, *writ denied sub nom.* **BCCL Enter., Inc. v. Rizzo**, 2014-1989 (La. 11/21/14), 160 So.3d 975 (rejecting a similar timeliness argument where the defendants waited three years to file an Article 971 motion.)

After hearing argument of counsel regarding the timeliness of the defendants' motion, the trial court concluded that good cause existed to allow the motion to be filed more than ninety days after service. Specifically, the trial court noted that the defendants were served in February 2017 and filed exceptions shortly thereafter, which were granted in part and denied in part in November 2017. Then, both this court and the Louisiana Supreme Court denied writs in May 2018 and October 2018, respectively.[4] Within sixty days of the last writ denial, the defendants filed the instant special motion to strike. "[U]nder the circumstances," the trial court, in its discretion, allowed the motion to be filed. Considering the procedural history of the case and the permissive language used in Article 971 to establish the ninety-day filing period, we cannot say the trial court abused its direction in considering the defendants' motion.

---

[3]  To the extent Mr. LaCerte maintains that the trial court erred by failing to require the defendants to seek leave of court to file a "late" motion under Article 971, this argument likewise lacks merit. This purported requirement is not set forth in Article 971, and Mr. LaCerte cites no other authority for his position.

[4]  The trial court incorrectly stated that the Louisiana Supreme Court denied Mr. Purpera's writ on August 8, 2018.

7

**STATE AND OFFICIAL CAPACITY DEFENDANTS:** *Constitutional Rights and Satisfaction of Their Initial Burden of Proof Under Article 971*

As he did in the trial court, Mr. LaCerte argues on appeal that the State and official capacity defendants are not "persons" under Article 971 and do not possess First Amendment rights. According to Mr. LaCerte, the rights created by the United States and Louisiana Constitutions are bestowed exclusively upon citizens; thus, "government[al] entities are not protected and lack Constitutional rights." Consequently, he asserts, the State and the individual defendants, sued in their official capacities, cannot satisfy their initial burden of showing their speech was constitutionally protected. **Shelton v. Pavon**, 2017-0482 (La. 10/18/17), 236 So.3d 1233, 1237 ("If the mover makes a *prima facie* showing that his comments were constitutionally protected and in connection with a public issue, the burden shifts to the plaintiff to demonstrate a probability of success on the claim.")

As an initial matter and to the extent Mr. LaCerte argues that the State and official capacity defendants are not "persons" within the meaning of the law, this argument lacks merit. It is well-settled that the State and its departments are juridical persons.[5] *See* La. Civ. Code art. 24, Comment (c). *See also* La. R.S. 49:220.22(A) ("The office of the state inspector general…is created and shall be a body corporate with the power to sue and be sued."). Louisiana Code of Civil Procedure Article 5251(12) defines "person" to include corporations.

However, a finding that the defendants are "persons" under the law does not end the inquiry. Our review of relevant Louisiana jurisprudence reveals that, although these defendants are "persons" with capacity to sue and be sued, they have, nevertheless, been denied certain constitutional rights, which are reserved for "natural persons." For instance, in **Brown v. State Farm Fire & Casualty Co.**,

---

[5] A suit brought against a State official in his official capacity is not a suit against the official, but rather, is a suit against the official's office. As such, it is no different from a suit against the State itself. **Smith v. Housing Authority of New Orleans**, 2017-0038 (La. App. 4th Cir. 6/28/17), --- So.3d ---, 2017 WL 3426018, *3, *writ denied*, 2017-1273 (La. 11/6/17), 229 So.3d 472.

8

2000-0539 (La. App. 1st Cir. 6/22/01), 804 So.2d 41, 43-5, *writ denied*, 2001-2504 (La. 12/7/01), 803 So.2d 37, this court recognized that the Department of Insurance is a "person" under Louisiana law but concluded that it does not possess the same constitutional rights as a *natural person*. *See also* **Hellmers v. Department of Fire**, 2019-0420 (La. App. 4th Cir. 10/30/19), (unpublished) 2019 WL 5607426, *6 (recognizing that the Department of Fire, City of New Orleans ("NOFD"), as a governmental agency, is a juridical person, and as a creature of the law and by definition, has no more legal capacity than the law allows. Unlike its employees, "NOFD, as a governmental agency, does not have a constitutionally guaranteed right of judicial review.")

While this court and other Louisiana courts have allowed State agencies, departments and boards to rely on Article 971 to dismiss a plaintiff's defamation cause of action, we agree with Mr. LaCerte that the specific question of whether the governmental defendant had a constitutional right to free speech was not before the court in those cases. There is no indication that the plaintiffs asserted that the defendants could not, as a matter of law, "speak in furtherance of a 'right of free speech'," as Mr. LaCerte does here.[6] Absent argument by the parties, courts of appeal generally will not raise such issues *sua sponte*. For this reason, the question of whether a constitutional right exists was not addressed. *See* **Stewart v. Livingston Parish School Board**, 2007-1881 (La. App. 1st Cir. 5/2/08), 991 So.2d 469, 474 ("As a general rule, appellate courts will not consider issues that were not

---

[6] *See* **Painter v. State Through Office of Governor**, 2018-1289 (La. App. 1st Cir. 12/26/18), (unpublished writ action) 2018 WL 6807124, *cert. denied*, 140 S. Ct. 224 (2019), (granting the writ application, in part, filed by defendant, Shane Evans, and granting Mr. Evans' Article 971 special motion to strike, in part. The allegedly defamatory statements were made by Mr. Evans in a search warrant application and his Office of Inspector General investigative report.) *See also* **Delta Chemical Corp. v. Lynch**, 2005-1414 (La. App. 4th Cir. 3/30/06), (unpublished) 2006 WL 8435223, *1-2 (reversing the trial court's denial of the Inspector General's Article 971 motion upon concluding that the statements made in the Inspector General's report were not defamatory).

raised in the pleadings, were not addressed by the trial court, or are raised for the first time on appeal.")

In those instances where the plaintiff challenged the application of Article 971 in a suit against a state department or board, it appears that the basis of the challenge was that the speech at issue did not involve a matter of public concern.[7] For instance, in **Alexander v. Louisiana State Board of Private Investigator Examiners**, 2019-0778 (La. App. 4th Cir. 4/1/20), 293 So.3d 1243, the plaintiff asserted a defamation cause of action against the Louisiana State Board of Private Investigator Examiners arising from statements allegedly made by the Board during pending litigation. **Id.** at 1246. The court rejected the plaintiff's assertion that Article 971 did not apply and, instead, concluded that the defendant, a public state board, satisfied its initial burden of proof under Article 971 by demonstrating that the allegedly defamatory communications at issue were a matter of public concern. There was no discussion concerning whether the Board's speech was entitled to constitutional protection. **Id.** at 1253-4.

Similarly, in **Regan**, this court affirmed the trial court's judgment granting the Article 971 motions filed by Attorney General James D. "Buddy" Caldwell, the Office of the Attorney General, and James David Caldwell, Jr., an Assistant Attorney

---

[7] Otherwise, courts have addressed challenges to a municipal defendant's status as a "person" for purposes of Article 971. *See* **Williams v. New Orleans Ernest N. Morial Convention Center**, 2011-1412 (La. App. 4th Cir. 5/11/12), 92 So.3d 572, 576, *writ granted*, **Williams v. New Orleans Ernest N. Morial Convention Center**, 2012-1201 (La. 9/21/12), 98 So.3d 299 (*per curiam*), finding the Convention Center is a juridical person capable of bringing an Article 971 motion. The supreme court granted the Convention Center's subsequent writ and granted its Article 971 motion, without discussing whether the Convention Center had a constitutional right to freedom of speech and, instead, focusing on the merits of the plaintiff's defamation claim. *See also* **Hunt v. Town of New Llano**, 2005-1434 (La. App. 3rd Cir. 5/3/06), 930 So.2d 251, 254-5, *writ denied*, 2006-1852 (La. 10/27/06), 939 So.2d 1283, wherein the plaintiff asserted the Town of New Llano was not a "person" within the contemplation of Article 971. The court found no merit in this argument, finding the Town was a juridical person and municipal corporation within the meaning of La. Civ. Code art. 24 and La. Code Civ. P. art. 5251. In **Wainwright v. Tyler**, 52,083 (La. App. 2nd Cir. 6/27/18), 253 So.3d 203, 223, the plaintiff asserted that Article 971 protected private citizens, not governmental officers, like the city's mayor and chief administrative officer (defendants). The court rejected this argument, noting the plaintiff's failure to cite any authority to support his argument and citing cases approving the use of Article 971 by governmental entities, including **Williams** and **Hunt**, none of which directly addressed the issue of whether a constitutional right existed.

General. **Regan**, 218 So.3d at 128. The challenged statements were made by Assistant Attorney General Caldwell to a local newspaper about Mr. Regan, an attorney, concerning Mr. Regan's alleged conduct following a grand jury proceeding against Mr. Regan's client, St. Bernard Parish President David Peralta.

On appeal, Mr. Regan argued that Article 971 did not apply because Assistant Attorney General Caldwell's statements were not made in furtherance of his right to free speech in connection with a public issue. Rejecting Mr. Regan's argument, this court explained:

> Regan concedes that the actions of his client, Mr. Peralta, certainly constitute a public issue because the public has an interest in knowing whether a Parish President's conduct is proper. Regan, however, avers that Caldwell's statements to the newspaper concern Regan's conduct and character during a non-public grand jury proceeding and that Caldwell's statements do not fall within the purview of Article 971. Regan contends that a contrary interpretation of the article to protect Caldwell's statements regarding the conduct and character of counsel contravenes the Legislature's intent.
>
> Clearly, as recognized by Regan and the trial court, the proceedings against Mr. Peralta involved a public issue or an issue of public interest. Also, the statements made by the Assistant [Attorney General] to the newspaper involved purported actions in connection with the proceedings in which Regan was representing Mr. Peralta. As such, these statements were made "in connection with a public issue or an issue of public interest." Given the legislative directive that the article is to be interpreted broadly, we find no error in the trial court's determination that LSA–C.C.P. art. 971 applies.

**Id**. at 126.

It is evident from this discussion that the court in **Regan** did not consider, and therefore, did not decide, whether the defendants' speech was constitutionally protected. Thus, **Regan** is distinguishable from the instant matter. It appears from our review of Louisiana jurisprudence that the constitutional question now raised by Mr. LaCerte is one of first impression in the context of Article 971.[8]

---

[8] In **Patton v. O'Bannon**, 2011-0989 (La. App. 1st Cir. 12/21/11), (unpublished) 2011 WL 6754099, *2-3, *as amended on reh'g* (1/4/12), *writ denied*, 2012-0223 (La. 3/30/12), 85 So.3d 120, a press release by the assistant district attorney and related articles published by media defendants concerning the plaintiff's conviction were the subject of an Article 971 motion. This court concluded that the defendants had a constitutional right to inform the public of the plaintiff's

11

We begin with the text of Article 971, which clearly and unambiguously identifies who is entitled to relief and under what circumstances: "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue shall be subject to a special motion to strike...."[9] La. Code Civ. P. art. 971(A)(1).

Article 971(F) provides a non-exclusive list of the types of speech deemed to be "in furtherance of a person's right of...free speech...in connection with a public issue." La. Code Civ. P. art. 971(F)(1)(a)-(d). The defendants argue that Article 971 "requires nothing more than a person's statement meeting one of these criteria," and there is "no need for any defendant – whether a State official or otherwise – to show anything more." According to the defendants, the "exercise of free speech" is a "term of art" expressly defined by Article 971. Thus, they contend that statements that satisfy subpart (F) "are, by statutory definition, proper objects of any person's motion to strike" such that no "constitutional connection" is required beyond the plain language of Article 971. We disagree with this interpretation of the article.

---

convictions, a matter of public concern. There was no examination of whether the assistant district attorney, in her official capacity and as a juridical person, enjoyed the same constitutional protection as a natural person, and no discussion of the holdings in **Louisiana Assessors' Retirement Fund v. City of New Orleans**, 2002-1435 (La. 2/7/03), 849 So.2d 1227, 1229, **Wooley v. State Farm Fire and Casualty Ins. Co.**, 2004-882 (La. 1/19/05), 893 So.2d 746, and **Brown**, which, as discussed, are the controlling precedent dictating the conclusion we now reach. Thus, we find **Patton** distinguishable as it appears the present issue before this court was not squarely presented to or addressed by the court. We further note that **Lee v. Pennington**, 2002-0381 (La. App. 4th Cir. 10/16/02), 830 So.2d 1037, 1043, *writ denied*, 2002-2790 (La. 1/24/03), 836 So.2d 52, the case favorably cited in **Patton**, involved a motion to strike filed by media defendants alone and is, thus, not applicable here.

[9] "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." La. Civ. Code art. 9. "When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law." La. Civ. Code art. 10. Generally, words are given their prevailing meaning, but "when the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole." La. Civ. Code arts. 11 and 12. **Shelton**, 236 So.3d at 1236.

Subpart (A) is the operative clause of Article 971 and sets forth the threshold requirements that the communication at issue arise from an act in furtherance of the speaker's constitutional right to free speech *and* be made in connection with a public issue. Subpart (F) merely defines the type of protected speech that will satisfy the "made in connection with a public issue" requirement. *See* **Shelton**, 236 So.3d at 1238 (recognizing that subpart (F) defines an act in furtherance of a person's right of petition or free speech and favorably citing **Yount v. Handshoe,** 2014-919 (La. App. 5th Cir. 5/28/15), 171 So.3d 381, 389, which noted that subpart (A) is the operative clause of the article.) Subpart (F) does not purport to, nor could it, create a constitutional right where none otherwise exists. The right to free speech must exist first, before an examination may be made to determine whether the *protected* speech was made in connection with a public issue, perhaps by satisfying one of the definitions set forth in subpart (F).[10]

Our conclusion that a constitutional right must exist independent of the definitions set forth in Article 971(F) is supported by Louisiana jurisprudence, which recognizes that the moving party's initial burden of proof on an Article 971 motion requires a showing that the subject matter of the suit against him stems from an action relating to free speech *and* in relation to a public issue. As this court explained in **Breen v. Holmes,** 2016-1591 (La. App. 1st Cir. 12/7/17), 236 So.3d 632, 636, *writ denied*, 2018-0049 (La. 3/2/18), 269 So.3d 708, "Our initial consideration is whether [defendants], as the parties asserting the special motion to strike, met their burden of demonstrating that (1) the suit stems from an act related to free speech and (2) the speech is connected to a public issue." *See also* **Roper v. Loupe**, 2015-1956 (La. App. 1st Cir. 10/28/16), (unpublished) 2016 WL 6330407, *4, *writ denied,*

---

[10] In **Shelton**, the Louisiana Supreme Court concluded that Article 971 does not protect speech that concerns only private matters and held that Article 971(F)(1)(a), which provides that any written statement made before a judicial body is an act in furtherance of a person's right of petition or free speech, must nonetheless satisfy the requirement of Subpart (A)(1) that such statements be made "'in connection with a public issue....'" **Shelton**, 236 So.3d at 1234-5.

2017-0090 (La. 3/13/17), 216 So.3d 808, and **Lamz v. Wells**, 2005-1497 (La. App. 1st Cir. 6/9/06), 938 So.2d 792, 796-7. Finally, see **Britton v. Hustmyre**, 2009-0847 (La. App. 1st Cir. 3/26/10), (unpublished) 2010 WL 1170222, *5, interpreting Article 971: Pursuant to Subpart (A), if a person is sued based on an act relating to his right of petition or free speech, then a special motion to strike is available to him. Further, the applicability of Article 971 depends on whether the defendant was exercising his right of free speech in connection with a public issue when the plaintiff was allegedly defamed. This requirement is satisfied by an act described in Subpart (F).

It is evident, then, that the mover's initial burden under Article 971 involves a two-part showing, and satisfying only the second requirement, i.e., that the speech was made in connection with a public issue, is not sufficient. Therefore, if the State and official capacity defendants do not have a constitutional right to free speech, Article 971 does not apply. Notably, the defendants do not assert that they have a constitutional right to freedom of speech and, instead, rely solely on their argument concerning the application of Article 971(F).

Article I of the Louisiana Constitution sets forth the Declaration of Rights and includes freedom of speech:

> Section 7. No law shall curtail or restrain the freedom of speech or of the press. Every person may speak, write, and publish his sentiments on any subject, but is responsible for abuse of that freedom.

Similarly, the First Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, provides, in part, "Congress shall make no law...abridging the freedom of speech...."

The Louisiana Supreme Court and this court have unequivocally held that State departments and municipalities, as creatures of the state and juridical persons, are not protected by these constitutional provisions. In **Louisiana Assessors' Retirement Fund v. City of New Orleans**, 2002-1435 (La. 2/7/03), 849 So.2d

1227, 1229, the City of New Orleans and its mayor in his official capacity, as intervenor, sought to have La. R.S. 11:1481 declared unconstitutional on equal protection grounds.[11] Reversing the trial court's finding that the statute[12] was unconstitutional, the supreme court concluded that the trial court improperly found these municipal defendants fell within the scope of protection of the equal protection clauses of the United States and Louisiana Constitutions. The court concluded:

> [I]t is well established the City, as a political subdivision of the state rather than a "person," is without the protections of LA. CONST. ANN. art. I, the Declaration of Rights Article, or the Due Process and Equal Protection Clauses of the United States Constitution. The jurisprudence has long held that municipalities are not entitled to Fourteenth Amendment protections.

**Id**. at 1229.

The court further noted that the Fourteenth Amendment is "'utterly without application to the political subdivisions of a state, which cannot be viewed as a person within the purview of the constitutional provision.'" **Id**. *quoting* **Warren County, Mississippi v. Hester**, 219 La. 763, 54 So.2d 12, 18 (1951), *cert. denied*, 342 U.S. 877, 72 S.Ct. 167, 96 L.Ed. 659 (1951).

Similarly, in **Brown**, mentioned above, and **Wooley v. State Farm Fire and Casualty Ins. Co.**, 2004-882 (La. 1/19/05), 893 So.2d 746, the Department of Insurance argued that newly enacted legislation deprived it of its constitutional right to judicial review of an adverse decision made by an administrative law judge. La. Const. art. I, §22; **Brown**, 804 So.2d at 43. This court considered whether the Department of Insurance, as a state agency, had a constitutional right to judicial review and concluded it did not.

---

[11] The Mayor of New Orleans also appeared in his individual capacity as a taxpayer of the city. **Louisiana Assessors' Retirement Fund**, 849 So.2d at 1228.

[12] Although the plaintiffs did not specifically allege the unconstitutionality of La. R.S. 11:82, the trial court also declared this provision unconstitutional. Even though Louisiana jurisprudence is firmly established that the constitutionality of a statute must be attacked with specificity, because of the disposition of the case, the supreme court did not address this issue. **Louisiana Assessors' Retirement Fund**, 849 So.2d at 1228, n. 3.

Louisiana Constitution Article I, Section 22, provides:

All courts shall be open, and **every person** shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights. (Emphasis added.)

The **Brown** court emphasized the "every person" language in Section 22 and noted that the Department of Insurance is a juridical person, not a natural person. **Id**. at 44. This court explained, "We do not believe the Louisiana Constitution imbues a juridical person, the Department of Insurance through its commissioner, with the same constitutionally protected rights reserved to the individual and for the good of the whole."[13] **Id**. at 46. Instead, as a juridical person and a "creature of the law," the Department has no more legal capacity than the law allows.[14] **Id**. at 45. The legislature created the Department of Insurance and, speaking for the people, properly elected to limit its right to judicial review. The **Brown** court affirmed the dismissal of the Department's petition for judicial review filed with the Nineteenth Judicial District Court.

The Department's constitutional challenge was later presented to the supreme court in **Wooley** on review of the Department's petition for injunctive and declaratory relief. **Wooley**, 893 So.2d at 768. The supreme court agreed with the court in **Brown** that, as a creature of the state, the Commissioner of Insurance "has no due process rights, no constitutional right to property, and no constitutional right of access to the courts." **Id**.

---

[13] We note that the United States Supreme Court has held that corporations, which the law defines as juridical persons, are entitled to First Amendment protection. **Citizens United v. Federal Election Commission**, 558 U.S. 310, 342, 130 S. Ct. 876, 899, 175 L. Ed. 2d 753 (2010), *citing* **First National Bank of Boston v. Bellotti**, 435 U.S. 765, 778, n. 14, 98 S.Ct. 1407, 55 L.Ed.2d 707. Nevertheless, we are bound to follow the clear precedent of this court and the Louisiana Supreme Court, which specifically addresses the question of whether "creatures of the state" enjoy constitutional protection. *See* **Oliver v. Magnolia Clinic**, 2011-2132 (La. 3/13/12), 85 So.3d 39, 44 ("trial courts and courts of appeal are bound to follow the last expression of law of the Louisiana Supreme Court.")

[14] Louisiana Civil Code Article 27 provides that "natural persons" enjoy general legal capacity to have rights and duties; however, a "juridical person" has no more legal capacity than the law allows. **Brown**, 804 So.2d at 44-5.

The defendants here – the State of Louisiana, the Legislative Auditor and the Inspector General – are also juridical persons and creatures of the law. *See* La. Civ. Code art. 24. As was the Department of Insurance, the Legislative Auditor was created by constitutional amendment. *See* La. Const. art. III, §11. The Auditor serves at the pleasure of and is solely responsible to the legislature. *See* La. Const. art. III, §11; La. R.S. 24:511. The Office of the Inspector General is a statutory creation within the Office of the Governor. La. R.S. 49:220.21, *et seq*. Further, like La. Const. art. I, §22 discussed in **Brown** and **Wooley**, the constitutional provision now at issue, La. Const. art. I, §7, bestows upon "[e]very person" the right to speak, write, and publish his sentiments on any subject.

Seeing no basis to distinguish the facts and constitutional provisions applicable herein to those at issue in **Louisiana Assessors' Retirement Fund, Brown**, and **Wooley**, we are constrained to follow Louisiana's clear precedent that Article I of the Louisiana Constitution and the Fourteenth Amendment to the United States Constitution do not bestow rights upon the State, the Legislative Auditor or the Inspector General, since they are juridical persons. Thus, we are compelled to find that the State and official capacity defendants, as juridical persons rather than natural persons, do not have a constitutional right to freedom of speech.

We conclude that the trial court erred in denying Mr. LaCerte's motion to strike the Article 971 motion filed by the State of Louisiana and Stephen Street, Jr. and Daryl Purpera, in their official capacities. Further, as a matter of law, these defendants cannot satisfy their initial burden of proof under Article 971 of making a *prima facie* showing that their comments were constitutionally protected. *See* **Shelton**, 236 So.3d at 1237. Therefore, the trial court erred by granting the Article 971 motion to strike filed by these defendants.

17

**INDIVIDUAL CAPACITY DEFENDANTS:** *Exception of No Cause of Action*

There is no contention by either party that Mr. LaCerte's defamation cause of action stems from statements made by Mr. Street and Mr. Purpera in their individual capacities in the exercise of their right of free speech (as natural persons) in connection with a public issue. To the contrary, the defendants contend that Mr. LaCerte failed to set forth any allegations against Mr. Purpera and Mr. Street in their individual capacities. Because speech by these defendants in their individual capacities is not at issue, Article 971 is inapplicable, and the trial court erred by granting the Article 971 motion in favor of Mr. Purpera and Mr. Street in their individual capacities.

Perhaps in recognition of this distinction, the defendants alternatively asserted an exception of no cause of action to dismiss Mr. LaCerte's individual capacity claims. The trial court did not consider the merits of the exception, and we decline to do so for the first time on appeal.

**ANSWER TO APPEAL:** *Prayer for Attorney's Fees Per Article 971(B)*

Finally, in their answer to Mr. LaCerte's appeal, the defendants pray for an award of attorney's fees for work performed in connection with the appeal.[15] Considering our reversal of the judgment granting the defendants' Article 971 motion, the defendants' request for attorney's fees is denied.

**CONCLUSION**

For the foregoing reasons, the May 15, 2019 judgment granting the defendants' special motion to strike filed pursuant to La. Code Civ. P. art. 971 and denying the plaintiff's "Expedited Motion to Strike" the defendants' motion is

---

[15] The defendants also assigned error to the trial court's failure to award attorney's fees for the work performed prior to appeal. This was done "out of an abundance of caution" as the trial court had not yet considered the defendants' request for attorney's fees pursuant to Article 971(B). The trial court subsequently awarded attorney's fees, as prayed for by the defendants, via judgments mailed on June 24, 2020. Therefore, this assignment of error and request for relief is moot.

18

reversed and this matter is remanded to the trial court for further proceedings in conformity with this court's ruling.

Costs of this appeal in the amount of $4,224.50 are assessed against defendants/appellees, State of Louisiana, Daryl Purpera, individually and in his official capacity as Louisiana Legislative Auditor, and Stephen Street, Jr., individually and in his official capacity as State Inspector General.

**REVERSED AND REMANDED.**

DAVID LACERTE

VERSUS

STATE OF LOUISIANA,
DARRYL PURPERA, INDIVIDUALLY
AND IN HIS CAPACITY AS LOUISIANA
LOUISIANA LEGISLATIVE AUDITOR,
STEPHEN STREET, JR., INDIVIDUALLY
AND IN HIS CAPACITY AS STATE
INSPECTOR GENERAL

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2019 CA 1401

**WHIPPLE, C.J., concurring in part and dissenting in part.**

I write separately to express that I agree with the majority's conclusion that there was no abuse of discretion by the trial court in considering the special motion to strike filed by Louisiana Legislative Auditor Darryl Purpera and State Inspector General Stephen Street, Jr., and in rejecting Mr. LaCerte's claim that the motion should be rejected as untimely. However, I respectfully disagree with the majority's conclusion that, as a matter of law, the Legislative Auditor and the State Inspector General in their official capacities could not demonstrate that their speech is constitutionally protected and, thus, could not bring a special motion to strike pursuant to LSA-C.C.P. art. 971.

Both this court and the Louisiana Supreme Court have endorsed the use of an Article 971 special motion to strike filed by public officials and entities in meritless defamation cases. In Patton v. O'Bannon, 2011-0989 (La. App. 1st Cir. 12/21/11), 2011 WL 6754099, *3 (as amended on rehearing 1/4/12) (unpublished), writ denied, 2012-0223 (La. 3/30/12), 85 So. 3d 120, plaintiff sued certain media entities and the Ascension Parish assistant district attorney for allegedly defamatory statements made in a press release by the district attorney's office. The defendants filed a LSA-C.C.P. art. 971 special motion to strike, which was granted by the district court. Patton, 2011 WL 6754099 at *1. Notably, in Patton, a case

1

factually similar to the matter now before us, the District Attorney argued in the district court that **the submission of a press release to a newspaper by a public official was protected speech under the First Amendment, and on appeal, this court found "no error in the district court's determination that the issuance of a press release by the district attorney's office ... constituted acts in furtherance of defendants' free speech rights in connection with a public issue under Article 971F(1)."** Patton, 2011 WL 6754099 at *3 (emphasis added). See also Ruffino v. Tangipahoa Parish Council, 2006-2073 (La. App. 1st 6/8/07), 965 So. 2d 414, 417-418 (wherein this court found that the district court had erred in failing to grant the Parish of Tangipahoa's special motion to strike), and Wainwright v. Tyler, 52,083 (La. App. 2nd Cir. 6/27/18), 253 So. 3d 203 (wherein the Second Circuit Court of Appeal rejected the argument that LSA-C.C.P. art. 971 was enacted to protect private citizens and that allowing public figures to use the statute against private citizens would pervert the purpose of the article, reasoning that Louisiana had enacted no such limitation on the use of anti-SLAPP motions, and noting that Louisiana jurisprudence contained several examples of use of article 971 motions by governmental or public entities or officials).

Additionally, in Williams v. New Orleans Ernest N. Morial Convention Center, 2011-1412 (La. App. 4th Cir. 5/11/12), 92 So. 3d 572, writ granted and reversed, 2012-1201 (La. 9/21/12), 98 So. 3d 299, cert. denied, 569 U.S. 963, 133 S. Ct. 2033, 185 L. Ed. 2d 896 (2013), the Louisiana Fourth Circuit Court of Appeal addressed the issue raised herein. In Williams, the plaintiff sued the New Orleans Ernest N. Morial Convention Center for defamation. The Convention Center filed a special motion to strike, which the district court denied. In a writ application, the Convention Center argued that the district court erred as a matter of law in regarding LSA-C.C.P. art. 971 as protecting only private citizens.

2

<u>Williams</u>, 92 So. 3d at 575. The Fourth Circuit noted that the district court never held that article 971 was inapplicable because the Convention Center could not be considered a "person." Rather, the lower court simply found article 971 to be inapplicable to the *facts* of the case. The Fourth Circuit recognized that the Convention Center is a juridical person pursuant to LSA-C.C. art. 24, quoting the Third Circuit case of <u>Hunt v. Town of Llano</u>, 05-1434 (La. App. 3rd Cir. 5/3/06), 930 So. 3d 251, 254, <u>writ denied</u>, 06-1852 (La. 10/27/06), 939 So. 2d 1283 (<u>citing</u> LSA-C.C. art. 24, Revision Comments—1987, comment (c)) and noting as follows:

> According to civilian doctrine, juridical persons are classified either as private persons or public persons. A public person is governed by rules of public law; a private person is governed by rules of private law. The state and its political subdivisions have dual personality. At times they act as public persons in a sovereign capacity and at times as private persons in the capacity of a citizen or a private corporation.

The **Fourth Circuit** then **determined that the Convention Center, as a political subdivision of the State, is a "person" recognized under LSA-C.C.P. art. 971.** <u>Williams</u>, 92 So. 3d at 576. While the Fourth Circuit ultimately affirmed the lower court's denial of the special motion to strike on the merits, on review, the Louisiana Supreme Court granted the Convention Center's writ application and **granted the Convention Center's special motion to strike**, with no discussion of the Fourth Circuit's conclusion that the Convention Center was a "person" under LSA-C.C.P. art. 971 with the ability to file such a motion. <u>Williams v. New Orleans Ernest N. Morial Convention Center</u>, 2012-1201 (La. 9/21/12), 98 So. 3d 299.

Other jurisdictions have similarly ruled when interpreting anti-SLAPP statutes. The California Supreme Court has addressed whether a governmental entity may bring a special motion to strike. In <u>Vargas v. City of Salinas</u>, 46 Cal. 4th

1, 16, 18, 205 P.3d 207, 215, 217 (2009), the California Supreme Court interpreted California's anti-SLAPP statute, which, like Louisiana's statute, also specifically provides that it is to be interpreted broadly, addressing whether government entities and public officials may invoke the protection of the anti-SLAPP statute. Plaintiffs contended that because the communications at issue were those of a governmental entity, rather than those of a private individual, the communications could not be viewed as "acts ... in furtherance of the person's right of petition or free speech under the United States or California constitution" under California's anti-SLAPP statute because government speech, unlike that of private individuals or organizations, is not protected by the First Amendment or the California Constitution. The California Supreme Court disagreed, holding as follows:

> Whether or not the First Amendment of the federal Constitution or ... the California Constitution *directly* protects government speech in general or the types of communications of a municipality that are challenged here—significant constitutional questions that we need not and do not decide—we believe it is clear, in light of both the language and purpose of California's anti-SLAPP statute, that the statutory remedy afforded by section 425.16 extends to statements and writings of governmental entities and public officials on matters of public interest and concern that would fall within the scope of the statute if such statements were made by a private individual or entity.

Vargas, 46 Cal. 4th at 17, 205 P.3d at 216.

The California Supreme Court noted that while plaintiffs focused their argument on the language of the statute describing the type of cause of action that is subject to a motion to strike, i.e., "[a] cause of action ... arising from any act ... *in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue ...,*" plaintiffs' arguments failed to take into account the section of the anti-SLAPP statute that defined the statutory phrase "act in furtherance of a person's right of petition or

4

free speech under the United States or California Constitution in connection with a public issue" very broadly.[1] Vargas, 46 Cal. 4th at 17, 205 P.3d at 216.

The California Supreme Court further reasoned that the statutory definition of "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" did not purport to draw any distinction between statements by private individuals and entities and those of governmental entities or public officials acting in their official capacity. Vargas, 46 Cal. 4th at 18, 205 P.3d at 216.

While acknowledging that there may be some ambiguity in the statutory language of the statute, the California Supreme Court reasoned that the definition of the phrase in question "is most reasonably understood as providing that the statutory phrase in question includes *all* such statements, without regard to whether the statements are made by private individuals or by governmental entities or officials." Vargas, 46 Cal. 4th at 18, 205 P.3d at 216. Thus, without addressing the issue of whether the First Amendment of the United States Constitution or the California Constitution directly protects government speech, the California Supreme Court resolved the issue of whether a governmental entity or public official could utilize the motion to strike in California's anti-SLAPP statute based on the statutory language alone.

---

[1]The California Supreme Court noted that the statutory phrase "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" was defined in very broad terms under the statute to include: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceedings authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; or (4) any other conduct in furtherance of the exercise of the constitutional rights of petition or free speech in connection with a public issue or an issue of public interest. Vargas, 46 Cal. 4th at 17-18, 205 P.3d at 216. As such, this definition is almost identical to the definition in Louisiana's anti-SLAPP article of an "[a]ct in furtherance of a person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue." LSA-C.C.P. art. 971(F)(1).

5

Moreover, while the issue of whether a public official or governmental entity is entitled to Freedom of Speech rights under the **United States Constitution**[2] is not a settled issue,[3] the United States Supreme Court has held that that "**[t]he identity of the speaker is not decisive in determining whether speech is protected. Corporations and other associations, like individuals, contribute to the 'discussion, debate, and the dissemination of information and ideas' that the First Amendment seeks to foster.**" Pacific Gas and Electric Company v. Public Utilities Commission of California, 475 U.S. 1, 8, 106 S. Ct. 903, 907, 89 L. Ed. 2d 1 (1986) (plurality opinion) (emphasis added) (quoting First National Bank of Boston v. Bellotti, 435 U.S. 765, 783, 98 S. Ct. 1407, 1419, 55 L. Ed. 2d 707 (1978)).

In Bellotti, although specifically addressing political speech, the Supreme Court rejected the argument that such speech of corporations and other associations

[2]Citing Citizens United v. Federal Election Commission, 558 U.S. 310, 342, 130 S. Ct. 876, 899, 175 L. Ed. 2d 753 (2010), the majority herein concedes that the United States Supreme Court has held that corporations, which the law defines as juridical persons, are entitled to First Amendment protection. Nonetheless, the majority ultimately concludes that we are bound to follow "clear precedent" of this court and the Louisiana Supreme Court that has specifically addressed the question of whether "creatures of the state" enjoy constitutional protection to find that, in this instance, the defendants do not.

However, it is worth noting that Louisiana's freedom of speech provision mirrors that of the First Amendment of the United States Constitution. Ortega v. Recreation and Parks Commission for Parish of East Baton Rouge, 2017-1502 (La. App. 1st Cir. 7/18/18), 255 So. 3d 6, 12 n.4. Thus, the guarantee of freedom of expression under the Louisiana Constitution must be at least equal to, if not greater than, that of the First Amendment of the United States Constitution. City of New Orleans v. Clark, 2017-1453 (La. 9/7/18), 251 So. 3d 1047, 1057.

[3]In United States v. American Library Association, Inc., 539 U.S. 194, 123 S. Ct. 2297, 156 L. Ed. 2d 221 (2003), the American Library Association and others sought to have declared unconstitutional a federal law that prohibited federal assistance for providing internet access to those libraries that failed to install software to block pornography and to prevent minors from accessing harmful material. The district court found the law to be facially unconstitutional, and in defending the district court's judgment, the appellees asserted that the law required libraries to surrender their First Amendment rights to provide the public with access to constitutionally protected speech. Citing to Justice Stewart's concurring opinion in Columbia Broadcasting System, Inc. v. Democratic National Committee, 412 U.S. 94, 139 n.7, 93 S. Ct. 2080, 2105 n.7, 36 L. Ed. 2d 772 (1973) (Stewart, J., concurring), in opposition to appellee's argument, the Government asserted that this argument failed because government entities do not have First Amendment rights. American Library Association, 539 U.S. at 210, 123 S. Ct. at 2307. However, the United States Supreme Court stated that it "need not decide this question" because the claim would nonetheless fail on the merits. American Library Association, 539 U.S. at 211, 123 S. Ct. at 2307.

should be treated differently under the First Amendment simply because such associations are not "natural persons." Bellotti, 435 U.S. at 776, 98 S. Ct. at 1415. The Supreme Court noted that "'there is practically universal agreement that a major purpose of [the First] Amendment was to protect the free discussion of governmental affairs.'" Bellotti, 435 U.S at 776-777, 98 S. Ct. at 1416 (quoting Mills v. State of Alabama, 384 U.S. 214, 218, 86 S. Ct. 1434, 1437, 16 L. Ed. 2d 484 (1966)). Further noting that discussion of governmental affairs is the type of speech that is indispensable to decision-making in a democracy, the Supreme Court reasoned that "[t]he inherent worth of the speech in terms of its capacity for informing the public does not depend upon the identity of its source, whether corporation, association, union, or individual." Bellotti, 435 U.S at 777; 98 S. Ct. at 1416. Thus, the Court framed the issue before it as whether the corporate identity of the speaker deprives the speech of what would otherwise be its clear entitlement to protection and ultimately concluded that it did not. Bellotti, 435 U.S at 778, 784; 98 S. Ct. at 1416 1420.

In so holding, the Supreme Court rejected the argument that First Amendment rights generally have been afforded only to corporations engaged in the communications business or through which individuals express themselves. Bellotti, 435 U.S at 781; 98 S. Ct. at 1418. Rather, the Supreme Court noted that its prior jurisprudence illustrated that "the First Amendment goes beyond protection of the press and the self-expression of individuals to prohibit government from limiting the stock of information from which members of the public may draw." Bellotti, 435 U.S at 783, 98 S. Ct. at 1419.

Turning to the case before us, in my view, the issues in this case are not resolved by the jurisprudence cited by the majority, nor is the result reached by the majority dictated by the cases upon which it relies. Rather than the approach taken

7

by the majority of focusing on the identity of the speaker, I would resolve the case based on the language of LSA-C.C.P. art. 971 itself, the approach utilized by the California Supreme Court in <u>Vargas</u> in interpreting its anti-SLAPP provision. As recognized in <u>Vargas</u>, the focus of Article 971 is to protect *types of speech*, rather than a *particular class of "persons."* Article 971 allows a "person" to bring a special motion to strike when a cause of action is asserted against the person "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue." LSA-C.C.P. art. 971(A)(1).

Article 971 specifically defines an "[a]ct in furtherance of a person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue" to include, among other things, "**[a]ny** written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official body authorized by law" and "**[a]ny** written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest." LSA-C.C.P. art. 971(F)(1)(b) & (c) (emphasis added). Thus, the clear and very broad language of the article establishes that the speech at issue herein is governed by Louisiana's anti-SLAPP article and obviates the need to address the scope of constitutional free speech rights of governmental entities and public officials in their official capacity.

Moreover, even if a constitutional analysis must be employed, applying the reasoning of the United States Supreme Court in <u>Bellotti</u>, and focusing on whether the *type of speech* is constitutionally protected rather than whether the identity of the speaker somehow deprives the speech of its entitlement to protection, <u>see</u> <u>Bellotti</u>, 435 U.S. at 778, 98 S. Ct. at 1416, the conclusion that must be reached

8

herein is that the type of speech at issue is constitutionally protected. The speech at issue herein is at the root of "free discussion of governmental affairs" and is the type of speech that is indispensable to decision-making in a democracy. See Bellotti, 435 U.S. at 776-777, 98 S. Ct. at 1416 (quoting Mills, 384 U.S. at 218, 86 S. Ct. at 1437.

Thus, I would conclude that "[t]he inherent worth of the speech in terms of its capacity for informing the public does not depend upon the identity of its source... ." Bellotti, 435 U.S at 777; 98 S. Ct. at 1416. While the majority states that there is no basis to distinguish the constitutional provisions applicable herein from other constitutional protections that have been denied to official capacity defendants, United States Supreme Court jurisprudence belies that assertion as to the constitutional protection afforded the type of speech at issue herein.

For these reasons, I respectfully disagree with the majority's conclusion that the Louisiana Legislative Auditor and the Louisiana Inspector General are precluded from filing an LSA-C.C.P. art. 971 Special Motion to Strike in response to Mr. LaCerte's suit. First, Mr. LaCerte's claim, as set forth in his petition, hinges upon speech of the type for which the filing of a special motion to strike is specifically authorized pursuant to LSA-C.C.P. art. 971 and, further, involves the discussion of governmental affairs. Moreover, the type of speech at issue herein is indispensable to decision-making in a democracy and, thus, should not lose its constitutional significance and protection based solely on the identity of the speaker.

Turning to the merits of the motion before us, I find this is precisely the situation where an Article 971 motion should be granted as this involves protected speech. Thus, I would affirm the trial court's judgment granting the defendants' special motion to strike and denying the plaintiff's "Expedited Motion to Strike

defendants' Article 971 Motion to Strike," and would grant the relief sought in the defendants' answer to appeal, finding no error in the trial court's conclusion that Mr. LaCerte cannot meet his burden of proving a likelihood of success on the merits of his defamation claim against these defendants.

For these reasons, I respectfully concur in part and dissent in part.